UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
                            )
REGINALD MOORE *et al.*,       )
                            )
    Plaintiffs,            )
                            )
    v.                    )  Civil Action No. 00-953 (RWR)(DAR)
                            )
MICHAEL CHERTOFF,            )
                            )
    Defendant.             )
_____ )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, ten black current and former special agents of the United States Secret Service, filed this employment discrimination action individually and on behalf of a putative class of black special agents against the Treasury Secretary alleging that the Secret Service has engaged in a pattern and practice of racial discrimination against black agents dating back to 1974. In a Memorandum Opinion and Order issued on October 24, 2004 ("the October 24 Opinion"), defendant's motion to dismiss the complaint was denied with respect to the individual non-promotion claims of several agents and granted with respect to all other claims, both individual claims and class claims. On November 5, 2004, plaintiffs filed a motion for clarification of the October 24 Opinion, seeking guidance on whether they were entitled to refile all of the dismissed claims

- 2 -

after administratively exhausting them.  Plaintiffs also have
filed a motion to amend their complaint in order to add
previously dismissed and new claims and supplemental facts.  They
assert that the defendant is equitably estopped from opposing as
untimely any new or refiled claims.  Defendant opposes the
motions, arguing futility and prejudice with respect to all
claims except the non-promotion class claim.

Defendant has not been equitably estopped from asserting the
untimeliness of new or dismissed claims.  After having taken
discovery, plaintiffs have not demonstrated any affirmative
misconduct by the defendant relied upon by the plaintiffs that
prevented or discouraged plaintiffs from timely filing their pre-
1999 claims with the Secret Service.  Because the doctrine of
vicarious exhaustion with respect to a timely class claim of non-
promotion is broad enough to encompass forms of discrimination
that affect the building blocks of promotion, plaintiffs' class
claims regarding discriminatory performance evaluations;
discriminatory transfers, assignments, and other career-enhancing
opportunities; discriminatory assignment to undercover work;
discriminatory hiring practices; discriminatory testing;
discriminatory disciplinary policies and practices; and
discriminatory awards and bonuses can be deemed vicariously
exhausted by their now properly exhausted non-promotion class

- 3 -

claim.  Therefore, plaintiffs' motion to amend the complaint will
be granted in part and denied in part.  Plaintiffs' pre-1999
class claims may not be pled as they are untimely, but
plaintiffs' class allegations that can be deemed vicariously
exhausted may be pled.  The Department of Treasury will not be
added as a defendant.  Plaintiffs are directed to refile an
amended complaint in accord with this Memorandum Opinion and
Order no later than May 1, 2006.

BACKGROUND

I.   FACTUAL BACKGROUND

     Plaintiffs allege enduring and systematic discrimination
dating back to 1974 by the Secret Service against black agents,
recounting a history of non-selections, desultory recruitment
efforts, exclusion from choice assignments, and general
harassment.  (See Compl. ¶¶ 12, 21-25, 34.)  In addition,
plaintiffs maintain that the Service engaged in a two-decade long
game of cat and mouse, consistently promising to address the
concerns of black agents when confronted with their concerns, but
never doing so.  With regard to the Service's many unfulfilled
promises, plaintiffs allege the following.

     In 1974, black agents sent Director H.S. Knight a memorandum
outlining numerous concerns about the treatment of black agents
in the Service.  (Id. ¶¶ 6-9.)  Plaintiffs do not allege they

- 4 -

received any responses to this communication from Knight or any
other representative of the Service.  In 1977, the agents sent a
letter to Knight in which they outlined largely the same concerns
and recounted two instances of white agents using racial slurs in
the presence of black agents.  (Id. ¶¶ 10-13.)  Knight responded
by sending a letter to all Service employees urging them to
refrain from using racial slurs and charging supervisors with
dealing with racist comments promptly and firmly.  (Id. ¶ 14.)

In 1987, representatives of black agents met with Assistant
Director of the Office of Investigations Kevin Houlihan and
Acting Assistant Director of Protective Operations George Opfer
and reiterated the concerns of racial discrimination they spelled
out in their 1977 letter.  (Id. ¶¶ 15-21.)  Houlihan responded by
letter to Special Agent Donald Tucker, one of the representatives
of the black agents.  In the letter, Houlihan agreed to address
and intensify efforts at recruiting and hiring, recognized the
need for "consultations with minority agents" and agreed to meet
on a regular basis, agreed to raise the issue of assignments to
the Special Agent in Charge, mentioned that the Service was
reconsidering its agent career tracking, and assured the agents
that each SAC had a mandate to deal with his personnel fairly.
(Id. ¶¶ 22-24.)  Houlihan did not offer any concrete proposals.
(Id. ¶ 25.)  Later that year, Tucker received a low performance

- 5 -

evaluation that he felt was retaliation for his earlier efforts
to raise issues of racial discrimination with Houlihan and Opfer.
Tucker then wrote to Houlihan that he intended to file a
complaint against the Service, and responded to Houlihan's letter
summarizing it as "basically stat[ing] that [Houlihan] will back
the supervisor -- right or wrong -- against the employee."  (Id.
¶ 26-27.)

In 1989, representatives of the black agents sent a
memorandum to Director John Simpson detailing the same concerns
as in previous correspondences.  (Id. ¶ 28.)  Plaintiffs do not
allege any responses to this communication from Simpson or any
other representative of the Service.  In 1992, John Magaw became
the director of the Service and the black agents sent a
"statement to [him] outlining concerns about recruitment and
hiring, promotions, assignments, training and
discrimination/disparate treatment."  (Id. ¶ 35.)  Plaintiffs do
not allege they received any responses to this communication from
Magaw or any another representative of the Service.

In their proposed amended complaint, plaintiffs offer two
additional communications between management of the Service and
the black agents in support of their claim of equitable estoppel.
In the early 1990s, plaintiffs allege that Magaw attended the
National Organization of Black Law Enforcement convention,

- 6 -

appeared receptive to minority concerns, and promised Special
Agent Alonzo Webb that he would investigate the treatment of
black agents.  (Am. Compl. ¶ 63.)  Then, in 1998, Deputy Director
Bowen met with Webb and expressed concern about the number of
minorities enrolled in Special Agent Training Classes.  Bowen
stated that "something has to be done" and indicated that he
intended to address the problem.  (Id. ¶ 64.)

II.  PROCEDURAL HISTORY

The defendants moved to dismiss plaintiffs' complaint.  The
October 24 Opinion denied defendant's motion to dismiss with
respect to the individual non-promotion claims of several agents
and granted the motion with respect to all other claims.
(October 24 Opinion at 2-3.)  On November 5, 2004, plaintiffs
filed a motion for clarification, seeking guidance on whether
they were entitled to amend their complaint here to reallege
"all[1] claims alleged in [their] initial complaint [filed] in
[this] court" after refiling with the EEOC and exhausting the

---

[1] Defendant argues that the individual claims that were
dismissed on October 24, 2004 were dismissed with prejudice as
they had never been first filed and administratively exhausted
with the Secret Service.  Plaintiffs confirmed at the
February 22, 2006 hearing that they refiled with the EEOC and
exhausted the dismissed class claims, but not the dismissed
individual claims (see Pls.' Reply in Supp. of Pls.' Mot. to
Amend ("Pls.' Reply") at 2), and that they do not seek to revive
those dismissed individual claims here.  The issue concerning the
dismissed individual claims, then, is moot.

- 7 -

claims dismissed on October 24, 2004.  (Pls.' Mot. For Clarif'n
at 1, 5.)  After refiling and exhausting their class claims with
the EEOC in accordance with <u>Martini v. Fed. Nat'l Mortgage Ass'n</u>,
178 F.3d 1336 (D.C. Cir. 1999), plaintiffs moved to amend their
complaint in order to reallege all of the previously dismissed
class claims, add facts supporting existing claims, add claims of
discrimination occurring after May 2000, and add the Department
of Treasury as a defendant.  (Pls.' Mot. to Amend at 1; Pls.'
Reply at 14-17.)  Plaintiffs argue that the October 24 Opinion
held that defendant was equitably estopped from arguing that new
or refiled claims should be barred as untimely, and that
plaintiffs may re-raise all of the dismissed claims and any
claims that were not included in the original complaint upon
exhaustion of administrative remedies.  (Pls.' Reply at 4.)

Defendant opposes the motions, disputing that any finding of
equitable estoppel was made, and arguing futility and prejudice.
Specifically, defendant contends that (I) the addition of the
previously dismissed class claims, except the non-promotion class
claim, would be futile because they were previously dismissed
with prejudice by the court, (ii) the addition of claims
predating the filing of the complaint would be futile because no
contact was made with an EEO counselor within 45 days of each
alleged incident, (iii) the addition of claims postdating the

- 8 -

original complaint would be futile because no contact was made with an EEO counselor within 45 days of each alleged incident, (iv) the Department of Treasury is not a proper defendant, and finally (v) the government would be prejudiced by the late addition of pre-lawsuit claims and the class claim filed two months after plaintiff indicated to the court that it would file the claim.  (Def.'s Opp'n to Pls.' Mot. to Amend at 7-23; Def.'s Surreply in Supp. of Opp'n to Pls.' Mot. to Amend at 15-17.) Defendant does not dispute that the non-promotion class claim of Agent John Turner is properly before the court.

Plaintiffs' November 2004 motion to clarify the October 24 Opinion will be granted principally to address issues raised regarding the proposed amended complaint.

<u>DISCUSSION</u>

I.  EQUITABLE ESTOPPEL AND TOLLING

"[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982).  Equitable tolling allows a plaintiff to bring a claim outside of the prescribed time period "if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim."

- 9 -

<u>Currier v. Radio Free Europe</u>, 159 F.3d 1363, 1367 (D.C. Cir.
1998).  Equitable estoppel "prevents a defendant from asserting
untimeliness where the <u>defendant</u> has taken active steps to
prevent the plaintiff from litigating in time."  <u>Id.</u>  Courts,
including the D.C. Circuit, have emphasized that the defendant
must engage in affirmative misconduct in order for equitable
estoppel to apply.  <u>See</u> <u>id.</u> at 1368 (stating that an employer
promising an employee a "fair and impartial investigation,"
advising an employee to "hang tight," and assuring an aggrieved
employee that "it's not over yet" would be insufficient to give
rise to equitable estoppel); <u>Thomas v. Eastman Kodak, Inc.,</u> 183
F.3d 38, 53 (1st Cir. 1999) (noting that in the 1st Circuit no
equitable tolling is available absent affirmative misconduct by
an employer); <u>Navarro v. United States</u>, 104 F. Supp. 2d 96, 104
(D.P.R. 2000) (stating that employer must actively mislead the
plaintiff who must rely on the misconduct to his detriment).

     Plaintiffs here argue that the statute of limitations should
be tolled from January 1, 1974 until the date the complaint was
filed in this court because the "Secret Service repeatedly
assured plaintiffs that it would take action" to correct
discriminatory practices, but failed to do so.  (Compl. ¶ 40.)
Plaintiffs do not contend that they were unaware of the existence
of their claims.  On the contrary, plaintiffs advance the

- 10 -

argument that they were aware of their claims but refrained from
bringing them in light of promises made to them by the Service.
(Id.)  Therefore, plaintiffs advance an argument of only
equitable estoppel and not equitable tolling.

Although plaintiffs have now had the benefit of discovery,
they have not come forth with sufficient facts to support the
inference that affirmative misconduct by the defendant should
stop him from asserting untimeliness of plaintiffs' claims.
Equitable estoppel will apply only where an employer has engaged
in affirmative misconduct.  Currier, 159 F.3d at 1367.
Plaintiffs, however, identify no assurances or promises made or
any affirmative conduct by the Service that might have misled
plaintiffs in response to plaintiffs' 1974 memorandum to Knight,
1989 memorandum to Simpson, or the 1992 statement to Magaw.  With
regard to the 1977 letter to Knight, plaintiffs allege only that
Knight responded with a letter to all employees addressing the
use of racial slurs.  While this response might have been
woefully inadequate to address the concerns of the black agents,
it did not amount to active misconduct misleading the plaintiffs.
The Houlihan letter to Donald Tucker in 1987 might have offered a
plausible claim of affirmative misconduct by the defendant, but
plaintiffs did not rely upon these statements in refraining from
filing a claim.  Tucker responded to Houlihan's letter by

- 11 -

indicating that he planned to file a complaint against the
Service for racial discrimination.  (Compl. ¶ 26.)  Moreover,
Tucker summarized Houlihan's letter as no promise at all to black
agents because Houlihan essentially promised to back the
supervisors whether they were right or wrong.[2]  (Id.)  The
promise by Magaw to Webb in the early 1990s and the 1998 meeting
between Webb and Bowen are also insufficient for plaintiffs'
equitable argument to prevail.  Plaintiffs allege no reliance by
Webb or any other agents based on Magaw's or Bowen's comments,
and Webb has alleged no claims of discrimination in this case.

     Plaintiffs do not allege any affirmative misconduct by the
defendant that plaintiffs relied upon that prevented or
discouraged plaintiffs from bringing their claims.  Therefore,
their equitable estoppel argument must fail.[3]

----

     [2]  In addition, Tucker was named as a victim in a 1989 class
complaint against the Service for racial discrimination.  (Def.'s
Mot. to Dismiss, Ex. A1 at 8, ¶ 28.)

     [3] Plaintiffs' argument that the October 24 Opinion forever
estopped defendant from arguing untimeliness is incorrect.  The
Opinion simply recognized that judging the complaint on its face
before any discovery had been undertaken, its allegations about
defendant's assurances -- while "fairly thin support" for an
equitable estoppel argument -- precluded any conclusion that no
set of facts could be proven to support such an argument for
purposes of a motion to dismiss under Federal Rule of Civil
Procedure 12(b)(6).  (October 24 Opinion at 27-28.)  In any
event, the estoppel discussion in the Opinion regarding whether
certain individual claims should be dismissed was dictum coming
as it did after the Opinion had already held that those
individual claims should be dismissed.  The dictum discounting

Case 1:00-cv-00953-PLF   Document 312   Filed 03/31/06   Page 12 of 17

- 12 -

## II.  VICARIOUS EXHAUSTION

Under the doctrine of vicarious exhaustion, a Title VII
plaintiff who has failed to file an EEO charge may, under some
circumstances, join his claim with that of another plaintiff who
has filed properly an EEO charge.  See Foster v. Gueory, 655 F.2d
1319, 1322 (D.C. Cir. 1981).  A plaintiff may invoke the doctrine
of vicarious exhaustion only if one plaintiff actually has
exhausted his claims and if the exhausted claims are so similar
to the unexhausted claims that "it can fairly be said that no
conciliatory purpose would be served by filing separate EEOC
charges . . . ."  Id.  A timely non-promotion class claim will
vicariously exhaust claims that involve discrimination in the
building blocks of promotion.  Contreras v. Ridge, 305 F. Supp.
2d 126 (D.D.C. 2004) (holding that "any EEOC investigation of [a]
denial of promotions claim would necessarily involve
investigation into the building blocks of promotion[,]" and so
the claims concerning such discrimination could be vicariously
exhausted by the non-promotion class claim).

Here, there is no dispute that Turner has administratively
exhausted his EEOC non-promotion class complaint.  Consequently,

defendant's attack on plaintiffs' estoppel argument at the
pleading stage in connection with those individual claims was
unnecessary to the decision already made to dismiss them.

- 13 -

plaintiffs' class claims relating to discriminatory performance
evaluations; discriminatory transfers, assignments, and other
career enhancing opportunities; discriminatory assignment to
undercover work; discriminatory hiring practices; discriminatory
testing; discriminatory disciplinary policies and practices; and
discriminatory awards and bonuses can be deemed vicariously
exhausted by Agent Turner's class complaint.  The October 24
Opinion is not to the contrary.  The Opinion explained that based
on Reginald Moore's individual complaint, the other individual
claims alleging other forms of discrimination -- discrimination
in hiring, performance evaluations, and testing, hostile work
environment, retaliation, and discriminatory assignment claims --
were "not the kinds of claims that the Secret Service could have
reasonably anticipated while investigating Reginald Moore's 1999
complaint." (October 24 Opinion at 25-26.)  The opinion reasoned
that the various forms of discrimination alleged by plaintiffs
had only the "generic thread of racial discrimination tying them
together." (Id. at 25.)  The facts of Reginald Moore's non-
promotion claim did not implicate the building blocks of
promotion because his claim asserted non-promotion in spite of a
high performance evaluation.  An investigation of his complaint
would not necessarily have involved examining the building blocks
of promotion.  However, now, as in Contreras, plaintiffs' class

- 14 -

complaint of non-promotion implicates the building blocks of
promotion.

III. MOTION TO AMEND THE COMPLAINT

In light of this discussion of the October 24 Opinion,
plaintiffs' motion to amend the complaint will be granted in part
and denied in part.  Plaintiffs' pre-1999 claims will be
disallowed for failure to timely file them with the Secret
Service, and because plaintiffs failed to present sufficient
facts to support their equitable estoppel argument.  Plaintiffs'
non-promotion class allegation and the class claim concerning
discrimination in the building blocks of promotion will be
allowed.[4]

Plaintiffs also seek to add the Department of Treasury as a
defendant.  Plaintiffs argue that because the Homeland Security
Act was not meant to affect pending civil litigation and because
they would be prejudiced by having to serve third-party subpoenas
on Treasury because of the burden of complying with its Touhy
regulations, see 31 C.F.R. § 1.11, they should be allowed to add
the Treasury Secretary as a named defendant.  (Pls.' Reply at 14-
17.)  These arguments are unpersuasive.  The proper defendant in

---

[4] Defendant's argument that the amendment would prejudice
him and that plaintiffs' delayed filing their motion to amend
lacks merit.

- 15 -

a Title VII suit against a federal agency is the head of the
department.  42 U.S.C. § 2000e-16(c).  Substituting the Secretary
of the Department of Homeland Security for the Secretary of the
Treasury did not run afoul of the Homeland Security Act because
this civil litigation has not been impeded by the substitution.
The Treasury Department will not be added as a defendant.

     Finally, plaintiffs will be directed to refile an amended
complaint in conformity with this Opinion no later than May 1,
2006.

<u>CONCLUSION AND ORDER</u>

     Plaintiffs' motion to clarify the October 24 opinion will be
granted.  Plaintiffs' pre-1999 class claims are untimely.
Plaintiffs have not produced facts demonstrating affirmative
misconduct by the defendant relied upon by the plaintiffs that
prevented or discouraged plaintiffs from bringing their pre-1999
claims timely.  The doctrine of vicarious exhaustion with respect
to a timely class claim of non-promotion is broad enough to
encompass forms of discrimination that affect the building blocks
of promotion.  Therefore, plaintiffs' remaining class claims
regarding discriminatory performance evaluations; discriminatory
transfers, assignments, and other career-enhancing opportunities;
discriminatory assignment to undercover work; discriminatory
hiring practices; discriminatory testing; discriminatory

- 16 -

disciplinary policies and practices; and discriminatory awards
and bonuses can be deemed vicariously exhausted by their now
properly exhausted non-promotion class claim.  Accordingly, it is
hereby

ORDERED that plaintiffs' motion [132] to clarify the October
24 Opinion be, and hereby is, GRANTED, and the clarification
sought is provided above.  It is further

ORDERED that plaintiffs' motion [155] to amend the complaint
be, and hereby is, GRANTED in part and DENIED in part.
Plaintiffs' pre-1999 class claims are untimely and may not be
pled.  Plaintiffs' class allegations concerning the building
blocks of promotion are deemed vicariously exhausted by Agent
Turner's non-promotion class claim and may be pled.  Plaintiff
shall refile an amended complaint in conformity with this opinion
no later than May 1, 2006.  It is further

ORDERED that plaintiffs' motion [257] for a hearing be, and
hereby is, DENIED as moot.  It is further

ORDERED that plaintiffs' February 3, 2006 motion [288] for
clarification be treated as a discovery dispute, and hereby is
REFERRED to the magistrate judge.[5]

---

[5] What claims remain in this case and what the proper scope
of discovery is concerning those claims are two separate issues.

- 17 -

SIGNED this 30th day of March, 2006.

                              _____/s/_____
                              RICHARD W. ROBERTS
                              United States District Judge