UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
REGINALD MOORE *et al.*,            )
                                    )
      Plaintiffs,                   )
                                    )
      v.                            )  Civil Action No. 00-953 (RWR)(DAR)
                                    )
MICHAEL CHERTOFF,                   )
                                    )
      Defendant.                    )
_____ )

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs and defendant have moved for reconsideration of
the March 30, 2006 Memorandum Opinion and Order ("March 2006
Opinion"), which ruled that plaintiffs could not plead their
untimely filed claims dating back to 1974 under a theory of
equitable estoppel, but plaintiffs' claims concerning the
building blocks of promotion had been vicariously exhausted and
could be pled in the amended complaint.  Plaintiffs argue that
they are nonetheless entitled to bring non-promotion claims
dating back to 1993 because they have alleged a continuing
violation which saves these otherwise untimely claims.  Defendant
argues, among other things, that claims of discrimination in the
building blocks of promotion should not be deemed vicariously
exhausted because the representative plaintiff's claim did not
implicate the building blocks of promotion and he lacks standing
to bring a class complaint for injuries he did not suffer.  Both

- 2 -

parties request that the time period of building block claims
that plaintiffs may file be clarified.  Because plaintiffs have
properly alleged a continuing violation in a pattern and practice
suit, they may plead non-promotion claims dating back to 1993.
Because plaintiffs' timely filed and fully exhausted non-
promotion class claim vicariously exhausts contemporaneous and
subsequent building block claims, claims concerning the building
blocks of promotion dating back to 1999 may be pled.

BACKGROUND[1]

Secret Service Agent John Turner timely contacted an EEO
counselor in February 2000 after learning of his non-selection to
a GS-14 position for which he had applied.  Agent Turner also
filed an administrative class complaint alleging that "the Secret
Service has discriminated against African-American Agents through
its personnel policies, practices, and procedures."  (Pls.'
Motion for Reconsideration, Ex. A, Second Amended Class Complaint
("Second Amended Class Complaint") ¶ 2.)  In describing his own
alleged discriminatory non-promotion, Agent Turner noted his
strong qualifications, including a high job evaluation score.
(See id. ¶¶ 35-40.)  With regard to black agents as a class, the
class complaint alleged enduring and systematic discrimination in

---

[1] The facts of this case are more fully recited in the March
2006 Opinion and in a Memorandum Opinion and Order issued on
October 24, 2004 ("October 2004 Opinion").

- 3 -

selection for competitive positions; performance evaluations;
transfers, assignments, and other career enhancing opportunities;
assignment to undesirable work; hiring practices; testing;
disciplinary policies and practices; and awards and bonuses.
(See id. ¶¶ 12-25.)

At the time of Agent Turner's timely filed non-promotion
class claim, the Secret Service's promotion policy was divided
into two phases:  (i) the Merit Promotion Plan ("MPP") scoring
process,[2] a multi-tiered evaluation process that involves the
scoring of candidates by supervisors and peers on the candidates'
past performance and experience, and (ii) the bid and selection
process, a process with limited directions and no written
evaluation procedures where the promotion Advisory Board selects
the candidate for a given vacancy.  (See Def.'s Opp'n to Pls.'
Mot. for Reconsideration, Ex. 1, Decl. of Barbara Salinas
("Salinas Decl.") ¶¶ 4-19.)  Only the applicants with the highest
MPP scores for a given vacancy are able to be considered in the
bid and selection phase of the promotion process.  (See id. ¶¶
14-15.)

_____

[2] The Secret Service has changed the MPP over the years.
The MPP in place at the time of Agent Turner's complaint was
implemented in 1998.  (See Pls.' Mot. for Reconsideration, Ex. B,
Expert Report of Frank Landy at 7.)  However, plaintiffs maintain
that the MPP implemented in 1998 did not produce any substantive
changes and that the Service's discriminatory promotion policy
actually dates back to 1993.  (See Pls.' Mot. for Reconsideration
at 8-10.)

- 4 -

The March 2006 Opinion held that plaintiffs could not plead
their untimely filed claims dating back to 1974 under a theory of
equitable estoppel, but plaintiffs could plead claims concerning
the building blocks of promotion because they had been
vicariously exhausted by Agent Turner's non-promotion class
claim.  Plaintiffs have moved for reconsideration arguing that
they have alleged a continuing violation in a pattern and
practice suit and are entitled to litigate non-promotion claims
dating back to the inception of defendant's discriminatory
policy.  Defendant has moved for reconsideration arguing that
plaintiffs' building block claims were not vicariously exhausted
by Agent Turner's complaint, and that if building block claims
were vicariously exhausted, only claims from July 2, 1999 to
May 3, 2000 were exhausted.

<u>DISCUSSION</u>

I.   DOCTRINE OF CONTINUING VIOLATIONS

Generally, a federal employee must contact an agency equal
employment opportunity ("EEO") counselor within forty-five days
of an alleged act of employment discrimination in order for the
claim to be timely.  29 C.F.R. § 1614.105(a)(1).  However, in a
pattern and practice suit where there is a continuing violation,
a plaintiff may "litigate claims that fall outside of the time-
filing requirements if he proves either a 'series of related
acts, one or more of which falls within the limitations period,

- 5 -

or the maintenance of a discriminatory system both before and
during the statutory period." Pleasants v. Allbaugh, 185 F.
Supp. 2d 69, 73 (D.D.C. 2002) (quoting Palmer v. Kelly, 17 F.3d
1490, 1495 (D.C. Cir. 1994)); see Anderson v. Zubieta, 180 F.3d
329, 337 (D.C. Cir. 1999) ("Where . . . discrimination is not
limited to isolated incidents, but pervades a series or pattern
of events which continue to within [45] days of the filing charge
. . ., the filing is timely . . . regardless of when the first
discriminatory incident occurred.") (quoting Laffey v. Northwest
Airlines, 567 F.2d 429, 473 (D.C. Cir. 1976)).  Claims dating
back to the inception of the continuing violation may be pled.
See EEOC v. Dial Corp., No. Civ. A. 99C3356, 2002 WL 1974072, at
*4 (N.D. Ill. July 23, 2002) (allowing to proceed in the
litigation any claims falling within the time period of the
violation); see also Anderson, 180 F.3d at 337 n.10 (noting that
plaintiffs may "recover for portions of the persistent process of
illegal discrimination that antedated the limitations period.")
(quoting McKenzie v. Sawyer, 684 F.2d 62, 72 (D.C. Cir. 1982)).

    Plaintiffs argue that because Agent Turner timely filed an
EEOC claim for non-promotion and plaintiffs have alleged the
existence of a discriminatory policy both during and predating
the statutory period, they are entitled to litigate non-promotion
claims dating back to the inception of the discriminatory policy.
Plaintiffs date the beginning of the violation to defendant's

- 6 -

promotion policies in 1993 and, in any case, maintain that the
defendant conceded a consistent policy, and thus a continuing
violation, dating back to January 1, 1998. (See Pls.' Mot. for
Reconsideration at 7-10.)  The defendant counters that plaintiffs
should not be able to plead claims predating 1999 on the theory
of a continuing violation for several reasons.  First, the
defendant contends that Agent Turner's complaint of
discrimination concerns only the bid and selection phase of the
Service's promotion policy, and therefore, Agent Turner lacks
standing to challenge the MPP given his high MPP score and cannot
bring a class claim that challenges the MPP.  (Id. at 7-9.)  This
argument is unpersuasive.  The MPP is part and parcel of the
promotion policy that governed the promotion decision that led to
Agent Turner's complaint.  Agent Turner's claimed injury is
fairly traceable to that process, and he has standing to
challenge it.  Notably, the defendant cites no factually
analogous case where a plaintiff alleged the existence of a
discriminatory promotion policy and the plaintiff's challenge was
limited to only a single phase of the alleged discriminatory
policy.  Moreover, the defendant's implied assertion that the
phases of the promotion policy are mutually exclusive is
unwarranted.  By the defendant's own description of the policy,
the MPP score could be taken into account in the bid and
selection phase.  (See Salinas Decl. ¶ 17 (noting that no

instructions are provided to the selection committee on how to evaluate the candidates at this phase).)  Although a candidate's score might be high enough for the candidate to reach the bid and selection phase, the score might not be high enough in relation to applicants competing at the bid and selection phase for the candidate to be truly competitive for a given vacancy.  Agent Turner's non-promotion claim as pled sufficiently implicates the MPP to give him standing to challenge the policy.

Second, the defendant maintains that Agent Turner's complaint is not a pattern and practice case, but rather amounts to a series of claims of discrete acts of discrimination. Therefore, the defendant argues, <u>National Railroad Passenger Corporation v. Morgan</u>, 536 U.S. 101 (2002), precludes application of the doctrine of continuing violations.  However, plaintiffs have plainly and consistently challenged the promotion policies of the Secret Service.  (<u>See</u> Second Amended Class Complaint ¶ 12 ("From the dates of their employment continuing up to and including the present time, *plaintiffs and the plaintiff class* have been discriminated against on the basis of their race, by the *employment practices and policies* of the Secret Service and by the manner in which these practices have been implemented.") (emphasis added); <u>see also</u> Compl. May 3, 2000 ¶ 47  ("From the dates of their employment, continuing up to and including the present time, *plaintiffs and the plaintiff class* have been

- 8 -

discriminated against on the basis of their race, African-American, by the *employment practices and policies* of the Secret Service and by the manner in which these practices have been implemented.") (emphasis added).  Plaintiffs are challenging the employment practices and policies of the Secret Service, and allege a pattern and practice claim.  See Torres v. Mineta, Civil Action No. 04-015 (GK), 2005 WL 1139303, at *4 (D.D.C. May 13, 2005) (noting that plaintiffs were challenging a policy or practice of discrimination, not discrete acts, and that Morgan had no applicability).[3]

Next, citing Taylor v. FDIC, 132 F.3d 753, 765 (D.C. Cir. 1997) and recent district court cases relying on Taylor, defendant argues that the doctrine of continuing violations requires that a plaintiff be unaware of the alleged violation in order for the doctrine to save untimely claims.  Taylor states that "[f]or statute of limitations purposes, a continuing violation is 'one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was

---

[3] The defendant also argues that plaintiffs have offered no statistical evidence of a policy of discrimination, and that in fact there is evidence that black agents are promoted at a slightly faster pace than other agents.  (See Def.'s Opp'n to Pls.' Mot. for Reconsideration at 19-22.)  Arguments regarding whether or not plaintiffs can demonstrate by a preponderance of evidence the existence of a pattern and practice of racial discrimination in the Secret Service's employment practices are best left for a motion for summary judgment or for trial.

- 9 -

repeated during the limitations period[.]'" Id. Plaintiffs

dispute that Taylor is the law of the circuit and counter with

Anderson v. Zubieta, 180 F.3d 329, 337 n.11 (D.C. Cir. 1999),

which held that the doctrine of continuing violations could be

invoked notwithstanding the plaintiffs' knowledge of the nature

of the challenged discriminatory policies.  Plaintiffs here argue

that Anderson and Taylor "squarely conflict" and urge the court

to adopt Anderson because Anderson is the later decided case and

adopting the rule in Taylor would collapse improperly the

doctrine of continuing violations into the separate doctrine of

equitable tolling.  (See Pls.' Reply at 11-13 (citing Pleasant v.

Allbaugh, 185 F. Supp. 2d 69, 76 (D.D.C. 2002) (noting the

tension in the holdings of Taylor and Anderson).)  Defendant does

not acknowledge the tension between the holdings of Anderson and

Taylor in its opposition to plaintiffs' motion for

reconsideration and offered no opinion at oral argument on the

issue.

Plaintiffs' argument that Anderson essentially overruled

Taylor is unavailing because "one three-judge panel . . . does

not have the authority to overrule another three-judge panel of

the court [of appeals].  That power may be exercised only by the

full court[.]"  LaShawn A. v. Barry, 87 F.3d 1389, 1395 (D.C.

Cir. 1996) (citation omitted).  Because Anderson and Taylor were

both three-judge panel decisions, both cases must be deemed

binding, notwithstanding the tension between their holdings, and
they require an effort to reconcile them.[4]

The doctrine of continuing violations is applicable where an
actual violation of Title VII occurred during the statutory
period and the current violation was either part of a series of
related acts or caused by a discrimination policy or system.
Palmer v. Kelly, 17 F.3d 1490 (D.C. Cir. 1994).  In Taylor, three
former employees sued their employer claiming it retaliated
against them for making protected disclosures, in violation of
the Resolution Trust Corporation Whistleblower Act, 12 U.S.C.
§ 1441a(q), and the First Amendment.  Taylor, 132 F.3d at 759.
In order to save otherwise untimely claims, two of the employees
alleged a continuing violation which comprised a litany of
retaliatory discriminatory acts, including reassignment,
misdirected mail, poor telephone service, and unsuitable work.
Id. at 765.  The panel in Taylor held that this *series of acts*
"amply manifested itself as a possible retaliation from the
start[,]" and so did not amount to a continuing violation.  Id.

---

[4] Recent district court opinions adopting the holding of
Taylor do not cite or discuss Anderson.  See Wilderson v. Snow,
Civil Action No. 04-0708 (RJL), 2006 WL 571930, at *3-4 (D.D.C.
Mar. 7, 2006); Torres, 2005 WL 1139303, at *5; Wiggins v. Powell,
Civil Action No. 02-1774 (CKK), 2005 WL 555417, at *15-16 (D.D.C.
Mar. 7, 2005); Schrader v. Tomlinson, 311 F. Supp. 2d 21, 27
(D.D.C. 2004).

- 11 -

In <u>Anderson</u>, black American citizens of Panamanian and Hispanic
national origin challenged their employer's salary and benefits
program because it paid them substantially less than other
American citizens, who were largely white and non-Panamanian,
working at the same jobs.  <u>Anderson</u>, 180 F.3d at 332.  The
plaintiffs in <u>Anderson</u> alleged a continuing violation and sought
to bring claims of discriminatory pay that occurred outside the
applicable statutory period.  <u>Id.</u> at 337.  The panel in <u>Anderson</u>
held that plaintiffs could bring their otherwise untimely claims
under a theory of a continuing violation, notwithstanding the
fact that plaintiffs may have known of the allegedly
discriminatory nature of the pay *policy*.  <u>Id.</u> at 337 n.11.

Taking both <u>Anderson</u> and <u>Taylor</u> as good law, the law of this
circuit, though far from clear, precludes applying the doctrine
of continuing violations where plaintiffs are aware of the
discriminatory nature of the acts if the basis for the continuing
violation is a series of related acts.  However, if plaintiffs
challenge a discriminatory policy or system, the doctrine of
continuing violations may apply without regard to the plaintiffs'
awareness or knowledge of the discriminatory nature of that
system.  In this case, since plaintiffs challenge an alleged
system of discrimination, <u>Anderson</u> governs and makes plaintiffs'
knowledge of the nature of the discriminatory system irrelevant.
Defendant's argument, then, that plaintiffs are precluded from

- 12 -

pleading a continuing violation because they knew of the
discriminatory nature of the policy fails.

Finally, defendant argues that the doctrine of continuing
violations is inapplicable because it would unduly prejudice the
defendant.  (See Def.'s Opp'n to Pls.' Mot. for Reconsideration
at 23-26.)  However, the defendant offers no authority for the
proposition that prejudice to the defendant is taken into account
in evaluating whether a continuing violation may be pled.

Because plaintiffs challenge an alleged pattern and practice
of employment discrimination at the Secret Service, allege an
actual violation of Title VII during the statutory period, and
allege a continuing violation dating back to 1993, they may
properly plead non-promotion claims dating back to 1993.

II.  BUILDING BLOCKS OF PROMOTIONS

Under the doctrine of vicarious exhaustion, a Title VII
plaintiff who has failed to file an EEO charge may, under some
circumstances, join his claim with that of another plaintiff who
has filed properly an EEO charge.  See Foster v. Gueory, 655 F.2d
1319, 1322 (D.C. Cir. 1981).  A plaintiff may invoke the doctrine
of vicarious exhaustion only if one plaintiff actually has
exhausted his claims and if the exhausted claims are so similar
to the unexhausted claims that "it can fairly be said that no
conciliatory purpose would be served by filing separate EEOC
charges . . . ."  Id.  A timely non-promotion class claim will

- 13 -

vicariously exhaust claims that involve discrimination in the
building blocks of promotion.  Contreras v. Ridge, 305 F. Supp.
2d 126, 133-34 (D.D.C. 2004) (holding that "any EEOC
investigation of [a] denial of promotions [class] claim would
necessarily involve investigation into the building blocks of
promotion[,]" and so the claims concerning such discrimination
could be vicariously exhausted by the non-promotion class claim).

    The defendant moves for reconsideration of the vicarious
exhaustion of plaintiffs' building block claims and advances
several arguments in support of the motion.  First, the defendant
asserts that Contreras is distinguishable from the instant case.
The defendant maintains that Agent Turner's complaint did not
involve any discrimination in the building blocks of promotion,
as demonstrated by his high MPP score, but in Contreras the
plaintiff complained to the EEO counselor about being the recent
victim of discrimination in building block-type claims.  (See
Def.'s Mot. for Reconsideration at 6-10.)  This argument misses
the mark.  In Contreras, Judge Robertson held that

        Because Contreras contacted an EEOC counselor three
        days after he was denied a promotion opportunity, and
        because both the EEOC class counseling report and the
        class administrative charge repeatedly allege
        discriminatory denial of promotions to Hispanic agents,
        I find that the claim of discriminatory denial of
        promotions was timely exhausted.  The class claims that
        are related to the denial of promotions claim --
        concerning transfers, assignments, and other
        career-enhancing opportunities, undercover and other
        undesirable work, discipline, awards and bonuses, and
        training -- are like or reasonably related to the

- 14 -

> timely exhausted promotions claim because they concern
> work opportunities that would credential or position
> Hispanic agents for promotions.  Any EEOC investigation
> of the denial of promotions claim would necessarily
> involve investigation into the building blocks of
> promotion.  Accordingly, because there is a reasonable
> relationship between the class claim of denial of
> promotions and the class claims of transfers,
> assignments, and other career-enhancing opportunities,
> undercover and other undesirable work, discipline,
> awards and bonuses, and training, these claims are also
> appropriate for adjudication.

Contreras, 305 F. Supp. 2d at 133-34.  Like the plaintiff in

Contreras, Agent Turner timely contacted an EEO counselor after

his non-selection, and Agent Turner's timely filed complaint

explicitly alleged discriminatory denial of promotions to black

agents.  This case and Contreras are analogous.

The defendant also maintains that Morgan and the October

2004 Opinion preclude application of Contreras, and that the

government would be prejudiced by the addition of these claims.

(See Def.'s Mot. for Reconsideration at 10-13.)  Morgan is

inapplicable here because plaintiffs allege a pattern and

practice claim and the Supreme Court explicitly stated that it

had no occasion to consider pattern and practice suits in Morgan.

See Morgan, 536 U.S. at 115 n.9.  The October 2004 Opinion does

not preclude vicarious exhaustion of building block claims

because, as the March 2006 Opinion explained, the October 2004

Opinion refused to hold as vicariously exhausted the claims

concerning forms of discrimination other than non-promotion

because the timely filed complaint at issue was an individual

- 15 -

complaint.  See Moore v. Chertoff, Civil Action No. 00-953 (RWR),
2006 WL 832465, at *5 (D.D.C. Mar. 30, 2006).  Plaintiffs now
have timely filed and exhausted a non-promotion class claim.
Finally, the government's prejudice argument is unavailing.
Because a reasonable investigation of a class allegation of non-
promotion would involve the building blocks of promotion, the
defendant was on notice and will not be unfairly prejudiced by
the addition of these claims.  See Contreras, 305 F. Supp. 2d at
133.

     The defendant next asserts that Agent Turner lacks standing
to exhaust any building block claims because he had a high MPP
score and any injury suffered by him was not fairly traceable to
anything except the bid and selection phase of the promotion
policy.  (See Def.'s Mot. for Reconsideration at 13-14.)  As is
discussed above, the defendant has standing to challenge the
Secret Service's promotion policy, including the MPP.  Further,
Agent Turner's complaint is sufficient to exhaust the building
blocks of promotion because, like the plaintiff in Contreras,
Agent Turner timely contacted an EEO counselor after his non-
selection and the timely filed complaint explicitly alleged
discriminatory denial of promotions to the entire class of
agents.

     The defendant also maintains that hiring practices, pre-
employment testing, and awards and bonuses should not be allowed

- 16 -

to be vicariously exhausted even if other building block claims
may be pled.  (See id. at 15-16.)  The defendant contends that
pre-employment testing and hiring practices are unrelated to
promotions in general, and that awards and bonuses are not part
of the Secret Service's promotion policy.  (Id.)  However, each
of these forms of discrimination was named in the administrative
class complaint.  (See Second Amended Class Complaint ¶¶ 21-22,
24.)  Plaintiffs allege that the Secret Service hired black
agents into lower civil service grades because of discriminatory
hiring practices and pre-employment testing.  These alleged
practices are reasonably related to a non-promotion class claim
and may be vicariously exhausted.  Claims of discrimination in
awards and bonuses also may be vicariously exhausted.  Even if
awards and bonuses are not counted toward an MPP score, it is not
clear that awards and bonuses of an agent may not be taken into
account in the bid and selection phase.  (See Salinas Decl. ¶ 17
(noting that no instructions are provided to the selection
committee on how to evaluate the candidates at the bid and
selection phase).)  These claims, too, are reasonably related to
a non-promotion class claim.

Because the defendant's arguments fail, plaintiffs may plead
allegations concerning the building blocks of promotion.
However, plaintiffs may not use the vicarious exhaustion of
claims concerning the building blocks of promotion to revive

claims from long past.  See Foster, 655 F.2d at 1323 (holding

that vicarious exhaustion was appropriate for untimely filed

claims when the "principal functions of the EEOC filing

requirements, . . . notice and to permit possible

conciliation[,]" had been served by an earlier timely filed

claim).  The Secret Service was put on notice of potential

building block claims by Agent Turner's class complaint.

Therefore, only building block claims reasonably contemporaneous

with and subsequent to Agent Turner's complaint may be pled.  See

id.; Cook v. Boorstin, 763 F.2d 1462, 1466 (D.C. Cir. 1985)

(allowing untimely claims filed subsequent to the original

complaint to be pled because the plaintiffs planned to prove

their allegations "by demonstrating the same thing: a pervasive

'pattern and practice' of racial discrimination in promotion and

advancement" and "no substantial possibility that any of the

individual claims might have been settled administratively"

existed).

## CONCLUSION

Plaintiffs challenge an alleged pattern and practice of

employment discrimination at the Secret Service, allege an actual

violation of Title VII during the statutory period, and allege a

continuing violation dating back to 1993.  Therefore, they may

properly plead non-promotion claims dating back to 1993.  Because

the plaintiffs timely filed a non-promotion class claim

complaining of discrimination in promotion against black agents
as a class, claims concerning the building blocks of promotion
are vicariously exhausted, and plaintiffs may plead such
allegations that are reasonably contemporaneous with or
subsequent to Agent Turner's timely filed complaint.
Accordingly, it is hereby

ORDERED that plaintiffs' motion [315] for reconsideration
be, and hereby is, GRANTED.  It is further

ORDERED that defendant's motion [314] for reconsideration
be, and hereby is, DENIED in part and GRANTED in part.
Plaintiffs are directed to file a Second Amended Complaint
consistent with this Memorandum Opinion and Order on or before
August 7, 2006.  It is further

ORDERED that defendant's motion [289] for reconsideration of
the magistrate judge's discovery ruling on MPP scores that must
be provided to plaintiffs, defendant's motion [328] for
reconsideration of the magistrate judge's ruling on further
discovery, and plaintiffs' motion [270] for reconsideration of
the magistrate judge's discovery ruling on reasons for non-
selections be, and hereby are, DENIED without prejudice to permit
further proceedings on these issues before the magistrate judge
in light of this Memorandum Opinion and Order.  It is further

ORDERED that defendant's motion [338] to dismiss the amended
complaint be, and hereby is, DENIED without prejudice to refiling

- 19 -

it after plaintiffs file their second amended complaint.  It is further

ORDERED that defendant's motion [356] for an extension of time to file a reply in support of the motion to dismiss be, and hereby is, DENIED as moot.

SIGNED this 7th day of July, 2006.

                              _____/s/_____
                              RICHARD W. ROBERTS
                              United States District Judge