UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                  )
REGINALD MOORE, et al.,           )
                                  )
      Plaintiffs,                 )
                                  )
      v.                          ) Civil Action No. 00-953 (RWR/DAR)
                                  )
JANET NAPOLITANO,                 )
                                  )
      Defendant.                  )
_____ )
```

## MEMORANDUM OPINION AND ORDER

Plaintiffs, African-American current and former special agents of the United States Secret Service, brought this employment discrimination action individually and on behalf of a putative class of African-American special agents against the Secretary of the Department of Homeland Security. The defendant objects to the magistrate judge's imposition of sanctions that were imposed under Federal Rule of Civil Procedure 37 after the magistrate judge granted a motion to compel a reasonable search for paper documents responsive to the plaintiffs' document requests and after the defendant violated the compulsion order. The defendant has not shown that the magistrate judge erred in imposing sanctions under Rule 37 for the defendant's discovery violation or violation of the order. The preclusion sanction, though, will be construed to preclude the defendant from offering any legitimate, nondiscriminatory reason for a nonpromotion in response to any prima facie case of disparate treatment

discrimination against the individual named plaintiffs, but not otherwise preclude the defendant from defending the case.

BACKGROUND

On October 29, 2007, after the defendant's Rule 30(b)(6) designee testified that the Secret Service had not searched the records of any decisionmaker in response to the plaintiffs' discovery requests served over a year earlier, the plaintiffs filed a motion for sanctions and to compel the defendant to comply with her discovery obligation "to conduct a reasonable search for and to produce all documents responsive to [the plaintiffs'] requests for production, including 'print and save' e-mails, 'contemporaneous notes,' and other documents 'regarding the actual substantive promotion[] decisions made by the Secret Service supervisors and managers that adversely affected the Plaintiffs and the [putative] class.'" Moore v. Chertoff, 255 F.R.D. 10, 13 (D.D.C. 2008) (quoting Pls.' Mot. to Compel a Reasonable Search ("Pls.' Mot. to Compel") at 1-2, 15-18).  The document requests at issue included a request by the plaintiffs served on May 23, 2006 seeking "[a]ll documents, . . . whether stored electronically or in hard copy, that contain information on the selection of" Special Agents for promotion to the relevant positions.  (Pls.' Mot. to Compel at 3.)  Plaintiffs also served on June 15, 2006 a document request, seeking all documents related "to the bid and selection process for each competitive

promotion" sought by the individual named plaintiffs and all
documents "provided to or reviewed by individuals who" made the
promotions decisions for each position for which the individual
named plaintiffs applied.  (See id. at 4 ¶¶ 5, 8.)  The
plaintiffs also sought a preclusion sanction that would prevent
the defendant from defending against the plaintiffs' individual
and class action prima facie cases of discriminatory
nonpromotion.  (See id. at 20.)  On December 21, 2007, the
magistrate judge granted the plaintiffs' motion to compel the
defendant to conduct a reasonable search for responsive paper
documents, ordered production of the documents by January 7,
2008, and ordered the defendant as a partial sanction to pay the
plaintiffs' costs, including reasonable attorneys' fees, of
moving to compel such discovery.  She vowed a further hearing for
the purpose of determining any additional appropriate sanction
for the defendant's discovery violation.  Moore, 255 F.R.D. at
14.  The magistrate judge held an evidentiary hearing at which,
though, the plaintiffs also vowed "to 'demonstrate through live
testimony . . . the egregiousness of [the] Defendant's violation"
and that the plaintiffs never received the responsive documents,
and the defendant also vowed to show "absolute compliance" with
the December 21, 2007 order.  Id. at 16.  (See also Def.'s
Proposed Findings of Fact [Docket #571] at 2 (acknowledging that
defendant's compliance with the December 21, 2007 compulsion

order would in part be at issue in the hearing).)  The docket
reflects that the parties presented evidence for sixteen days
from January 10 though April 14 of 2008 and closing arguments at
the end of May.  Based on the entire record, Moore, 255 F.R.D. at
13, including the evidence introduced at the hearing, the
magistrate judge found that even one year after the order
granting the motion to compel was issued, the defendant had still
not complied, id. at 33, and the defendant's failure to conduct a
reasonable search for and to produce all responsive documents was
willful given the defendant's behavior throughout discovery.  Id.
at 35-36.  Invoking her authority to issue "just orders," id. at
36, under Rule 37(b)(2) when a party "fails to obey an order to
provide . . . discovery," the magistrate judge sanctioned the
defendant by ordering that "once Plaintiffs have established a
prima facie case of discriminatory non-promotion, Defendant may
not defend any such prima facie case[.]"  Id. at 37.  The
magistrate judge also ordered "pursuant to Rule 37 . . . . [that
the] Defendant shall pay Plaintiffs their costs, including
reasonable attorneys' fees, of drafting, filing, and litigating
the Motion [to Compel and] for Sanctions."  Id.

The defendant has filed objections to the magistrate judge's
ruling, arguing that the magistrate judge erred because the
defendant complied with the order compelling her to conduct a
reasonable search, and because the magistrate judge's order

imposed "a severe sanction precluding [the] defendant from being able to thoroughly defend the merits of this case." (Def.'s Obj'ns at 1.) In addition, the defendant objects to the magistrate judge's order awarding costs to the plaintiffs, alleging that no cost sanction is appropriate under Rule 37(b)(2)(C) because the defendant complied with the court's order, and that the defendant had already paid for plaintiffs' costs incurred in filing their motion. (Id. at 44.)

## DISCUSSION

Federal Rule of Civil Procedure 72(a) and Local Civil Rule 72.2(b) allow a party to seek reconsideration of a magistrate judge's decision in a discovery dispute. "On review, the magistrate judge's decision is entitled to great deference unless it is clearly erroneous or contrary to law, that is, if on the entire evidence the court is left with the definite and firm conviction that a mistake has been committed." Moore v. Chertoff, 577 F. Supp. 2d 165, 167 (D.D.C. 2008) (internal quotation marks and citations omitted); see also Graham v. Mukasey, 247 F.R.D. 205, 207 (D.D.C. 2008); LCvR 72.2(c) ("Upon consideration of objections filed . . . , a district judge may modify or set aside any portion of a magistrate judge's order under this Rule found to be clearly erroneous or contrary to law.").

I.   RULE 37 AUTHORITY

   The defendant contends that the magistrate judge erred in issuing a sanction under Rule 37(b)(2) because the plaintiffs requested the sanction before the magistrate judge issued her December 21, 2007 order granting the plaintiffs' motion to compel, and because the magistrate judge's sanction opinion makes no finding that the defendant violated her December 21, 2007 order.  (Def.'s Obj'ns at 29-31.)

   The timing of a party's request for sanctions does not determine a court's authority to issue them.  The federal rules, for the most part, do.  Plaintiffs complained in a motion to compel that the defendant had not searched for and produced documents.  The magistrate judge agreed, granted the motion to compel, and pending a further hearing to determine what if any additional sanctions were warranted, preliminarily assessed costs against the defendant, as the magistrate judge was authorized to do.  Fed. R. Civ. P. 37(a)(5).  The defendant makes no argument or showing that the magistrate judge lacked such authority.

   For months thereafter, the magistrate judge held a hearing with a dual focus on additional sanctions for defendant's discovery violation found at the December 21, 2007 hearing, and defendant's compliance with the compulsion order issued that day. The defendant neither argues nor demonstrates that the magistrate judge lacked continuing authority under Rule 37(a)(5) to consider

whether sanctions beyond the sanction preliminarily issued for the initial discovery violation were warranted.

The magistrate judge had authority to issue sanctions for violation of the compulsion order. "A district court may order sanctions, including a default judgment, for misconduct either pursuant to Rule 37(b)(2)[1] . . . , which authorizes a court to assess a sanction for violation of a discovery order, or pursuant to the court's inherent power to 'protect [its] integrity and prevent abuses of the judicial process.'" <u>Webb v. District of Columbia</u>, 146 F.3d 964, 971 (D.C. Cir. 1998) (quoting <u>Shepherd v.</u>

---

[1] Under Rule 37(b)(2)(A),

[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders. They may include the following:
(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii) striking pleadings in whole or in part;
(iv) staying further proceedings until the order is obeyed;
(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

Am. Broad. Cos., Inc., 62 F.3d 1469, 1474 (D.C. Cir. 1995))
(alteration in original).

Contrary to the defendant's assertion, the magistrate did
find that the defendant violated the December 21, 2007 order
requiring the defendant to search for and produce by January 7,
2008 documents that were the subject of the motion.  The
magistrate judge expressly concluded that the defendant "fail[ed]
to timely" or reasonably "search for and serve the documents
responsive to Plaintiffs' requests for production of documents
. . . in accordance with . . . the court's order compelling
discovery[.]"  Moore, 255 F.R.D. at 33.  Similarly, the
magistrate judge concluded that the defendant "made a mockery of
. . . the order granting Plaintiffs' motion to compel[.]"  Id. at
35.  Given the dual focus of the hearing, the finding that the
defendant failed to comply with the compulsion order required
that the magistrate judge "order the disobedient party . . . to
pay the reasonable expenses, including attorney's fees, caused by
the failure, unless the failure was substantially justified or
other circumstances make an award of expenses unjust."  Fed. R.
Civ. P. 37(b)(2)(C).  As is discussed below, the defendant has
not shown error in the finding that she failed to comply with the
compulsion order, or shown that her failure to comply was
substantially justified.  Nor has she shown that the award of
costs was unjust.  That the defendant may already have paid the

costs imposed on December 21, 2007 simply means that the
defendant would not be required to pay again any portion of the
total costs imposed in the 2008 order that has already been paid.
Accordingly, the defendant has not shown that the magistrate
judge lacked authority under Rule 37 to sanction the defendant
for her discovery violation and for failing to comply with the
discovery order.

*   *   *

The magistrate judge has presided over proceedings involving
discovery disputes in this case since 2005.  She has found the
defendant's behavior regarding discovery obligations consistently
over time to range from being lackluster to being recalcitrant
and obdurate.  Moore, 255 F.R.D. at 12, 26, 35.  She found that
the case was delayed "in large measure by the Defendant's failure
to provide discovery without the virtually continuous
intervention of the court."  Id. at 33.  The enforcement record
is not disputed.  The magistrate judge has had to enter against
the defendant no fewer than nine orders compelling the defendant
to provide discovery.  Id. at 12.  She has denied a protective
order sought by the defendant to limit discovery.  Id.  The
question here is whether, in light of this history, she had a
basis for concluding that the defendant's recent search efforts
for decisionmakers' documents were not reasonable, and the

defendant's conduct was willful so as to warrant a severe sanction.

II.  DEFENDANT'S SEARCH EFFORTS

The defendant alleges that the magistrate judge erred in finding that the defendant failed to conduct reasonable searches for responsive decisionmaker documents.  As a preliminary matter, the defendant alleges that the magistrate judge erroneously placed the burden of proof on the defendant, relying on the heading in the magistrate judge's opinion stating that the "[d]efendant failed to adduce credible evidence of any reasonable search efforts in November and December, 2007 and January, 2008" as evidence that the burden of proof had shifted.  (Def.'s Obj'ns at 27.)  Contrary to the defendant's objection, viewing the magistrate judge's opinion in its entirety, the magistrate judge did not erroneously place the burden of proof on the defendant.  When a plaintiff alleges that a defendant violated a discovery order compelling a search by failing to conduct an adequate search, a plaintiff invariably will call upon the defendant's agents to explain what efforts were or were not made to comply with the court's discovery order to show that such efforts were deficient.  Once a plaintiff uncovers such evidence that the defendant failed to search in particular locations or that individual searches conducted by the defendant's agents were inconsistent, it necessarily falls to the defendant, the party

with superior knowledge of its own records, to show the reasonableness of its decisions regarding where and how to search for responsive documents.

Here, the magistrate judge carefully considered all of the evidence presented by both parties to determine whether the plaintiffs had carried their burden, as the moving party, to justify imposing a sanction.  If anything, the language of the heading identified by the defendant as significant -- "[d]efendant failed to adduce credible evidence of any reasonable search efforts" -- and the findings within that section of the magistrate judge's opinion suggest that the defendant's presentation of evidence in its defense actually bolstered the plaintiffs' case for sanctions.  They do not establish that the magistrate judge improperly placed the burden of proof on the defendant.

The defendant also contends that the magistrate judge did not assess the defendant's search efforts under the correct legal standard, namely, reasonableness.  (Def.'s Obj'ns at 27.)  Under Rule 26, a party is obligated to make a reasonable effort to search for and produce documents responsive to the opposing party's document requests.  See Fed. R. Civ. P. 26(g) Advisory Comm. Notes (1983 Amendment).  "Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances[,]" and "[t]his standard is heavily dependent on

the circumstances of each case." Id. The magistrate judge's
opinion applies this reasonableness standard, explicitly finding
that the defendant "failed to conduct a reasonable search in
2006" and similarly did not demonstrate "any reasonable search
efforts in November and December, 2007 and January, 2008."
Moore, 255 F.R.D. at 21-22. The defendant identifies no
misstatement of the reasonableness standard and instead points to
particular factual findings as evidence that the magistrate judge
applied a more stringent standard than reasonableness.

A. 2006 search

The magistrate judge found that the defendant had limited
the search for responsive documents to only three Secret Service
divisions -- Personnel, EEO, and Management and Organization --
and had not "searched the records of any decision-maker" stored
outside of these divisions prior to the December 21, 2007 order.
(Id. at 21.) As the magistrate judge noted, the defendant
acknowledged that it "could have gone to the individual
supervisors . . . within the Secret Service and queried them
personally about what recommendation materials they may have
[had] that would [have been] responsive to the Plaintiffs'
request." (Id. (quoting May 29, 2008 Hrg. Tr. at 32) (internal
quotation marks and alterations omitted).) The defendant
contends that there was no evidence to support the magistrate

judge's conclusion that a reasonable search needed to include searches for documents outside of the three searched divisions.

The plaintiffs presented evidence demonstrating the likely existence of responsive documents in the records of other decisionmakers and recommenders in the promotion process, namely sworn testimony from Secret Service agents indicating that promotion recommendations were communicated through e-mail. (See Pls.' Opp'n to Def.'s Obj'ns at 16 n.7; Pls.' Proposed Findings of Fact [Docket #568] ¶¶ 299-301 (collecting deposition testimony).) The defendant concedes that there was testimony from Secret Service agents that "'it [was] possible' that field offices may have [had] additional promotion-related information not sent to the Personnel Division, and that promotion-related information may consist of a recommendation by a SAIC [Special Agent-in-Charge] or by a first-level supervisor to an SAIC." (Def.'s Obj'ns at 12.) Notably, the defendant points to no evidence presented to the magistrate judge that demonstrated that responsive documents likely would not have been located within the records of these other decisionmakers and recommenders. In light of the plaintiffs' evidence that responsive documents regarding promotion recommendations existed outside of the three searched divisions and demonstrating the importance of documents related to the promotion recommendations to the issues in this action, the defendant has not shown that it was clearly erroneous

for the magistrate judge to conclude that, in the circumstances
of this case, a reasonable search for documents responsive to the
plaintiffs' request must include searches of the records of
individual decisionmakers located outside of the three divisions
searched.

      B.   <u>2007 and 2008 searches</u>

The magistrate judge found that the defendant failed to
conduct a reasonable search in November and December of 2007 and
January of 2008, partly in violation of the order granting the
plaintiffs' motion to compel a reasonable search of the records
of decisionmakers for responsive documents.  In so finding, the
magistrate judge reasoned that the defendant provided
insufficient search instructions to the approximately 182
supervisors who were tasked with searching for responsive
documents in response to the December 21 order.  <u>Moore</u>, 255
F.R.D. at 21-22.  The magistrate judge also found that the search
efforts described by the defendant's own witnesses -- SAIC
Bryant, Resident Agent-in-Charge ("RAIC") Gavin, and RAIC Mays --
revealed that these individuals conducted inconsistent and
inadequate searches for documents in response to the December 21
order.  In addition, the magistrate judge found that the
testimony of Inspector Hunnicutt, who was entrusted to assure an
adequate search, lacked candor, was not credible and could not be

relied upon to explain the defendant's search efforts.  Id. at
26-27.

1. Search instructions

The magistrate judge found that the search instructions
given to the individual agents charged with carrying out the
defendant's search for documents in November and December of 2007
were ambiguous and deficient.  After the plaintiffs filed their
motion to compel, Secret Service Inspector Arthur Kuhn sent an e-
mail on November 5, 2007 to approximately 182 supervisors at the
GS-15 level or higher directing each individual

> to search locations including "personal files," "office
> files," and "the office files for which [they] were
> previously assigned when involved in the decision-
> making process[]" for "notes, letters, memoranda, e-
> mails (both paper and electronically saved), or any
> other paper documents that specifically relate to the
> 'selection decisions' for GS-14 and GS-15 promotions
> and reassignments from 1991 to 2005.

Id. at 18 (quoting Def.'s Evid'y Hrg. Ex. 1) (alterations in
original).  After the magistrate judge granted the plaintiffs'
motion to compel searches, "[o]n December 26, 2007, the Secret
Service's Office of the Chief Counsel forwarded an e-mail to 'all
Assistant Directors [ADs], Special Agents in Charge [SAICs],
Resident Agents in Charge [RAICs], and Division Chiefs' directing
a search 'of their offices, including all personal and office
files, for any paper documents related to decision-making or
recommendations for bids of selections to any GS-14, GS-15, or
SES Special Agent position from 1991 to 2005.'"  Id. (quoting

Def.'s Evid'y Hrg. Ex. 14 at 1).  This e-mail was sent to approximately 156 agents.  Id.

The magistrate judge found that the ambiguity in the defendant's instructions "became evident as Defendant's own witnesses testified regarding their respective interpretations of the terms 'personal files,' 'office files' and 'office' in the context of the e-mail inquiries."  Id. at 16 n.18 (listing several agents' inconsistent interpretations of the files they were to search in response to the defendant's two e-mail inquiries).  For example, the magistrate judge discussed the testimony of Agent Faron Paramore, SAIC of the Director's Office, who testified that he originally thought the November 5, 2007 email required a physical search of only his personal office, and searched the files of the entire Director's Office only after receiving clarification from the Secret Service's Chief Counsel's office about the intended scope of the requested search.  Id. at 22-23.  Nevertheless, the defendant used the same ambiguous term "office files" in the December 26, 2007 email without further instructions to clarify for everyone else what "office files" meant.  In addition, the magistrate judge found that defendant's search instructions failed to adequately inform the e-mail recipients, including Inspectors Kuhn and Hunnicutt, whose "role [it was] to receive documents located during the searches and to answer any questions posed by the recipients of the e-mail," of

the claims and defenses involved in this case even though the
plaintiffs' document requests sought documents "relating . . . in
any way to the claims and defenses raised in this case[.]" Id.
at 23 (internal quotation marks omitted).

The defendant disputes the magistrate judge's conclusion
that the defendant's search instructions were ambiguous, arguing
that "however a witness may have initially interpreted [the
search terms], all the witnesses cited [by the magistrate judge]
testified that they ultimately understood that they were to
search all of the office under their supervision where responsive
records might be located."  (Def.'s Obj'ns at 14.)  With
testimony from only the small sample of the approximately 182
recipients of the November 2, 2007 e-mail and 156 recipients of
the December 26, 2007 e-mail, it was not error to infer from the
different initial interpretions that there was ambiguity in the
search instructions.  The defendant has pointed to no evidence
before the magistrate judge that demonstrates that the defendant
communicated with all of the e-mail recipients to ensure that
they had not adopted an erroneous interpretation of the scope of
the search requested and had not certified completion of a search
based on an erroneous interpretation of what was required.  In
addition, as is discussed below, the testimony of the agents
regarding their search efforts in response to the 2007 e-mail
search instructions revealed that they conducted inconsistent

searches and, in some instances, inadequate searches. Thus, contrary to the defendant's objection, it was not error to conclude from the evidentiary record that the defendant's search instructions did not sufficiently inform recipients of what efforts needed to be made to satisfy the defendant's obligation to conduct a reasonable search.

The magistrate judge found that the defendant's search instructions were deficient for failing to include express search references to appropriate index numbers or off-site storage, including the Federal Records Center. Moore, 255 F.R.D. at 23-24. The defendant argues that the plaintiffs did not prove that the agents needed such specific search instructions. (Def.'s Obj'ns at 15-16.) However, the plaintiffs need not have proven that the agents charged with searching their offices needed such a directive. Inspector Kuhn testified that the Secret Service filing system designates office files regarding promotion of special agents by a particular index number, and that responsive documents could be stored at the Federal Records Center, but he did not know if anyone searched there. Moore, 255 F.R.D. at 23, 30. The defendant has pointed to no evidence demonstrating that the administrative index number and documents stored off-site were irrelevant to the plaintiffs' request. It was enough for the magistrate judge to note the omission from search instructions of obvious locations of potentially responsive

documents in assessing whether the defendant's omissions were indicative of a chronically and willfully anemic approach to discovery obligations warranting a significant sanction.

The magistrate judge found that Inspectors Kuhn and Hunnicutt were not adequately informed about what constitutes a document responsive to the plaintiffs' requests.  The defendant counters that these inspectors were tasked with only gathering information on the defendant's searches and that because of their minimal role, "[t]he fact that the inspectors . . . were not involved in determining whether a document was responsive to plaintiffs' requests does not indicate that defendant's instructions . . . were in any way deficient, or that the searches they performed were in any way inadequate."  (Def.'s Obj'ns at 15.)  While it is far from clear that the evidentiary record supports the defendant's characterization of Kuhn and Hunnicutt as mere information-gatherers, the magistrate judge also found that the e-mail recipients -- who were tasked with searching -- were inadequately informed about what constituted a responsive document.  Moore, 255 F.R.D. at 23.  The defendant has not identified evidence in the record demonstrating that all e-mail recipients were adequately informed of the types of responsive documents that should have been produced in response to the e-mail inquiry.  Thus, even accepting the defendant's argument that Kuhn and Hunnicutt had a minimal role that did not

require them to have knowledge of what constituted a responsive document, such an argument does not undermine the magistrate judge's conclusion that there was a widespread failure to instruct e-mail recipients appropriately.

## 2.   Inconsistent search efforts

In reaching the conclusion that the defendant failed to conduct a reasonable search in response to the December 21, 2007 order, the magistrate judge considered the search efforts of four of the defendant's agents: SAICs Paramore and Bryant and RAICs Gavin and Mays.  The magistrate judge found that the testimony of these four agents "exposed the widely varying extent of the searches conducted[,]" and that Bryant, Gavin, and Mays' testimony revealed that they conducted inadequate searches for responsive documents, not reasonable ones consistent with the defendant's obligation under the federal rules.  Id. at 24.

### a.   *Bryant*

The magistrate judge found that Bryant "failed to search any of the administrative files of the Buffalo field office in November, 2007."  Id.  She found that in response to the November, 2007 e-mail inquiry, Bryant asked his administrative supervisor if any files would contain any responsive information, and his administrative supervisor -- without conducting a search of any files -- indicated that the information he was seeking would not be in "'an official capacity in [the] file room.'"  Id.

(quoting Mar. 6, 2008 Evid'y Hrg. Tr. at 14-15) (alteration in original).  The magistrate judge further found that Bryant believed that his inquiry of the administrative supervisor constituted an adequate search.  Id.  She also found that beyond questioning the administrative supervisor, Bryant "merely looked at the personal files maintained in his desk, his calendar and e-mail account . . . [but] did not search in closets, credenzas, safes, vaults, off-site storage, or file cabinets other than the one containing his own personal documents" and did not ask other staff members to search for responsive documents.  Id. (internal citation omitted).

The defendant alleges that Bryant reasonably relied upon information provided by the administrative supervisor who had worked in the office for over twenty-eight years and who had searched the Buffalo office records in May 2007 to prepare for an unrelated inspection.  (Def.'s Obj'ns at 17-18.)  Some reliance by Bryant upon his administrative supervisor to help conduct a search was not the problem.  While the defendant has shown that the administrative supervisor had general familiarity with the files in the Buffalo office based upon her earlier unrelated review of office records, the defendant has not shown that the administrative supervisor ever reviewed office files for the purpose of identifying documents responsive to the November and December e-mail inquiries.

In addition, Bryant testified that he made promotion recommendations via personal e-mail but that where Bryant searched produced no hard copies of recommendation e-mails. Moore, 255 F.R.D. at 24-25. The magistrate judge also noted that despite the efforts described, Bryant signed "Paper Documents Search Certification form[s]" on November 6, 2007 and December 26, 2007, "indicating that he performed thorough searches of his office." Id. at 24 n.22. This record reflects no error in the magistrate judge finding that neither Bryant nor his administrative supervisor actually performed a thorough or reasonable search for documents in response to the November 2007 inquiry.

b. *Gavin*

The magistrate judge found that Gavin largely relied upon his resident administrative manager's word that there would be no promotion documents or promotion-related materials in the Wilmington office. However, the administrative manager did not conduct any confirming search for responsive documents. Id. at 25. Gavin also asked his staff whether they had any promotion-related materials in their office space, and took their word when they all said "no" without even confirming whether they had conducted a search for such materials and without conducting such a search himself. Gavin did look in a "small two-drawer filing cabinet in the resident administrative manager's office"

containing administrative filings and searched simply "by looking at the file folder labels affixed to each file" rather than opening them.  Id.  He also searched his own personal folder where he kept activity reports, travel vouchers and other miscellaneous documents, and looked in the closet and cabinets when he "happened to be in the closet" or "happened to look in cabinets."  Id. at 25-26.  However, Gavin "did not specifically look for notes, notebooks, memos, calendar entries, or print-and-save e-mails in response to the December 26, 2007" e-mail inquiry.  Id. at 26.  Gavin, nevertheless signed a certificate that a thorough search was conducted.

Whatever the likelihood was of finding responsive documents, virtually no search was conducted, much less a thorough one.  The magistrate judge found that RAIC Gavin's search efforts were "lackluster."  Id.  The record bears out that characterization, and was fair support for the magistrate judge's negative assessment of the reasonableness of the defendant's search.

c.  <em>Mays</em>

The magistrate judge found that in response to the December 2007 e-mail, Mays searched the office's administrative files by flipping through pages of those file folders that he thought from their labels would contain responsive documents.  Id.  Mays testified that he also "forwarded an e-mail to the members of his staff, asking them to conduct a search of their offices" and

reply with responsive materials. Id. However, none responded
to him and he never spoke with them regarding their search
efforts. Thus, Mays "could not testify regarding whether [his
staff members] conducted a search or the scope of any performed
search." Id. Nevertheless, Mays, too, signed a form and
certified that a thorough and reasonable search was performed.

The defendant contends that the search was reasonable enough
since Mays testified "that when he gives an order to his staff he
expects them to comply." (Def.'s Obj'ns at 20.) However, it was
not error for the magistrate judge to find problematic that Mays
certified that a reasonable search was performed without having
surveyed his staff members to determine "the scope of any
performed search[,]" Moore, 255 F.R.D. at 26 (emphasis added), or
to factor this search in with the remaining evidence in assessing
whether the defendant's overall performance warranted a
substantial sanction.

### 3. Inspector Hunnicutt's credibility

The defendant objects to the magistrate judge's reliance on
Inspector Hunnicutt's credibility as evidence of whether or not a
reasonable search was performed, contending that Hunnicutt's
testimony was irrelevant because Hunnicut was tasked with only
"document[ing] defendant's search efforts," and was not "in
charge of searching for documents . . . or play[ing] any role in
the actual searches." (Def.'s Obj'ns at 21-22.) Thus, the

defendant contends, "[a]lthough defendant's efforts through
Inspector Hunnicutt to gather evidence about how the search was
performed may have been flawed, it does not mean that a
reasonable search was not performed." (Id. at 22.)  The
defendant has not shown error in the magistrate judge's finding
that Hunnicutt's testimony lacked candor and credibility, Moore,
255 F.R.D. at 27, or her reliance on such finding as evidence in
assessing whether a reasonable search was performed in response
to her order or whether the defendant's overall conduct was
willful.  Hunnicutt was presented as the person who was
responsible for keeping track of the Secret Service's search
efforts and had knowledge regarding what efforts were undertaken
in response to the court's December 21 order.  For such an
important witness to testify without credibility or candor about
what search efforts were made can be probative of the defendant's
good faith and easily lead to grave skepticism in making that
assessment.

Overall, considering the magistrate judge's findings
regarding the ambiguity in the defendant's search instructions,
the inconsistent and inadequate search efforts of agents Bryant,
Gavin, and Mays, and Inspector Hunnicutt's failure to credibly
explain the defendant's search efforts, it was not clearly
erroneous for the magistrate judge to find that the defendant
violated the December 21, 2007 order compelling the defendant to

conduct a reasonable search for paper documents.  Nor was there error in finding that this evidence in light of the defendant's chronic discovery misconduct during the pendency of this case warranted a severe sanction.

III. PRECLUSION SANCTION

The magistrate judge found that the defendant's violation of the order compelling a reasonable search was willful, and ordered that "once Plaintiffs have established a *prima facie* case of discriminatory non-promotion, Defendant may not defend any such *prima facie* case[.]"  Id. at 37.  The defendant alleges that the magistrate judge erred in imposing this sanction because the circumstances of this case are not sufficiently egregious to warrant such a severe sanction.  The defendant alleges that either no sanction is warranted or lesser sanctions of reopening discovery, allowing plaintiffs to supplement their motion for class certification, and a division of costs for adjudicating the plaintiffs' motion to compel are more appropriate in the circumstances.  (See Def.'s Obj'ns at 44-45.)

The "central requirement of Rule 37 is that any sanction must be just," and the "choice of sanction should be guided by the concept of proportionality."  Bonds v. District of Columbia, 93 F.3d 801, 808 (D.C. Cir. 1996) (internal quotation marks omitted).  Bonds instructs that before imposing a severe, litigation-ending sanction that approaches a default judgment or

denies a party a fair trial on the merits, a district court must "consider whether lesser sanctions would be more appropriate for the particular violation" because the judicial system favors disposition of cases on the merits.  Id.  In considering whether a severe sanction "rather than a milder disciplinary measure" is appropriate, a court should consider "the effect of a [party's] contumacious conduct on the court's docket, whether the [party's] behavior has prejudiced the [opposing party] and whether deterrence is necessary to protect the integrity of the judicial system."  Id.  Then, if imposing a severe sanction, the court should "either make a finding supported by the record that the more severe sanction is necessary to avoid prejudice to [the opposing party] or to the court's calendar . . . or -- if the sanction is based only on deterring future discovery misconduct -- the more severe sanction must be supported by a finding of flagrant or egregious misconduct by the" sanctioned party.[2]  Id. at 809.

Bonds also cautions that a preclusion sanction may be so severe as to be litigation-ending, even if it is not described as such.  The district court in Bonds precluded the defendant "from offering any fact witnesses at trial as a discovery sanction" for

---

[2]In appropriate situations, a court also may find that a severe sanction is necessary to prevent some benefit to the sanctioned party.  Bonds, 83 F.3d at 809.  The magistrate judge did not base the sanction at issue on any finding that such a sanction was necessary to avoid a benefit to the defendant.

"failing to respond in a timely manner to an interrogatory requesting the names of all persons with knowledge of relevant events regarding the class action and then providing an inadequate response." Id. at 803-04. Although recognizing that "the [broad] preclusion order did not operate with such assured effect as a default judgment[,]" the court of appeals nonetheless found that such a sanction "approach[ed] a default judgment in its severity." Id. at 808-09. The court explained that "resolution of the plaintiffs' sexual harassment and retaliation claims was likely to depend on the credibility of conflicting witnesses and the jury's evaluation of [the defendant's] employees' motives." Id. at 808. As a result, while it was "true that the [defendant] could still introduce documentary evidence and expert testimony, counter-designate portions of deposition testimony introduced at trial, cross-examine the plaintiffs' witnesses, and make opening and closing arguments[,]" the preclusion order was still a severe sanction resulting in a "one-sided trial" where the defendant was left "with little ability to contest the plaintiff's claims." Id. at 808-09. Upon reviewing the district court's finding of prejudice to the plaintiffs and the court, and the need for deterrence, the Bonds court found that the district court's findings were insufficient to persuade the court that lesser alternative sanctions would have been ineffective. Id. at 813.

In imposing the sanction at issue, the magistrate judge intended that the chosen sanction neither be "'litigation-ending,'" nor "'approach[] a default judgment' . . . nor den[y] Defendant the right to a trial on the merits." <u>Moore</u>, 255 F.R.D. at 32 n.34, 33 n.36, 37 (quoting <u>Bonds</u>, 93 F.3d at 808) (first alteration in original).  Nonetheless, recognizing the defendant's "concerns that the sanction . . . is akin to a default," <u>id.</u> at 33 n.36, the magistrate judge applied the <u>Bonds</u> framework when considering whether to impose a severe sanction and made findings that the defendant's conduct caused prejudice to the plaintiffs and disrespected the court, and there was a need to deter the defendant's willful violation.

A.   <u>Prejudice to the plaintiffs</u>

The magistrate judge held that the defendant's "failure to timely search for and serve the documents responsive to Plaintiffs' requests for production of documents . . . has prejudiced Plaintiffs' ability to conduct meaningful discovery and to prepare to address the merits of their claims."[3] <u>Moore</u>,

---

[3]The magistrate judge also noted that the defendant argued that the plaintiffs premised their argument "'on the assumption that there is a huge cache of responsive paper recommendation documents previously undisclosed by defendant that is essential to [P]laintiffs' case.'"  <u>Id.</u> at 34 (quoting Def.'s Proposed Findings ¶ 34, at 90) (alteration in original).  The magistrate judge expressly rejected the defendant's claim that the plaintiffs' advanced this argument and disavowed making any finding with respect to the "volume of withheld documents[,]" reasoning that volume of withheld documents is not dispositive when determining an appropriate sanction under Rule 37.  <u>Id.</u>

255 F.R.D. at 33. In reaching this conclusion, the magistrate judge found that the defendant "failed even to commence a reasonable search for the full extent of the documents responsive to [the plaintiffs' requests] until sixteen months after the requests were served," and that even a year after she entered her compulsion order, she could not find that "a reasonable search for the full extent of the responsive documents ha[d] been undertaken." Id. at 33. Moreover, the magistrate judge found that the plaintiffs have been "'required to waste time, money, and effort in pursuit of cooperation[.]'" Id. (quoting Gallina v. Wyandotte Police Dep't, No. 4:07-CV-12640, 2008 WL 5090551, at *2 (E.D. Mich. Nov. 26, 2008)). The defendant objects to the magistrate judge's finding that the plaintiffs have suffered prejudice, contending that the magistrate judge gave insufficient consideration to "whether the putative undisclosed documents must be essential, important, or even relevant to plaintiffs' claims" and that, as evidenced by the plaintiffs' filing of their motion for class certification, there was no "evidence that plaintiffs have been unable to pursue their claims with the mountains of discovery produced by defendant." (Def.'s Obj'ns at 35, 37.) In addition, the defendant alleges that the magistrate judge failed to cite evidence supporting the conclusion that the plaintiffs have been required to waste time, money, and effort. (Id. at 36.)

First, as a matter of law, a court does not examine the merits of a case when determining whether to certify a class under Rule 23. Wagner v. Taylor, 836 F.2d 578, 587 (D.C. Cir. 1987). The fact that the plaintiffs have been able to file a class certification motion does not demonstrate that the defendant's violation of the court's order compelling a search did not prejudice the plaintiffs' ability to conduct discovery and prepare their case on the merits.

Moreover, regarding the defendant's allegation that the magistrate judge gave insufficient consideration to the plaintiffs' need for undisclosed documents, the magistrate judge considered and found that the plaintiffs carried their burden of demonstrating that there are responsive decisionmaker documents not produced that are relevant to the plaintiffs' preparation of the merits of their case. Moore, 255 F.R.D. at 34. There was a substantial evidentiary basis for the finding that undisclosed responsive documents regarding decisionmakers' promotion decisions existed. Inspector Kuhn declared that while the agency does not generally consider as official records that the agency maintains as business records individual emails that individual supervisors send bearing promotion recommendations (Kuhn Decl. ¶ 3 (Doc. # 498-15)), he testified that he knew from personal experience that individual supervisors do email such recommendations to each other. (Tr. of Jan. 10, 2008 Evid'y Hrg.

at 184-85.)  Nine of those very supervisors testified that they
sent (Pls.' Evid'y Hrg. Exhs. 49 at 123-24, 52 at 53, 59 at 106,
65 at 93-95; Tr. of Mar. 6, 2008 Evid'y Hrg. at 33 (testimony of
Dunlap, Carey, Pickle, Dowling, Bryant)) or received (Pls.'
Evid'y Hrg. Exhs. 50 at 90, 58 at 187, 63 at 222, 64 at 55, 66 at
48-49 and 233 (testimony of Spriggs, Riggs, Truscott, Samway,
Bauer)) such recommendations by email.  A critical question in
any discrimination action is whether the alleged disparity
between plaintiffs and other similarly-situated individuals or
groups was the result of unlawful discrimination.  See Brady v.
Office of Sergeant at Arms, 520 F.3d 490, 493-94 (D.C. Cir.
2008).  Evidence demonstrating individual decisionmakers' reasons
for promotions or nonpromotions is highly relevant to the
plaintiffs' individual and potential class claims.  While a
pattern and practice class action relies on statistics to
demonstrate the class-wide injury, anecdotal evidence is
permitted and useful to bring "the cold numbers convincingly to
life."  Int'l Bhd. of Teamsters v. United States, 431 U.S. 324,
339 (1977); see also Arnold v. U.S. Postal Serv., 863 F.2d 994,
999-1000 (D.C. Cir. 1988); Segar v. Smith, 738 F.2d 1249, 1277-78
(D.C. Cir. 1984); Valentino v. U.S. Postal Serv., 674 F.2d 56,
71-72 (D.C. Cir. 1982).  Here, the plaintiffs' document requests
sought to capture the reasons for particular decisions to promote
or not promote agents which are highly relevant to establishing

an employer's discriminatory motive.  Given that the defendant

has failed to fully comply with the obligation to locate and

produce these relevant decisionmaker documents, and the finding

that this failure continued a pattern and practice of obduracy in

discovery production, the magistrate did not err in finding that,

despite the significant volume of discovery already produced, the

plaintiffs have been prejudiced by the defendant's failure to

search adequately for and produce decisionmaker documents.[4]

Similarly, the defendant's suggestion that the magistrate judge

had no basis to conclude that the plaintiffs wasted time, money,

and effort in pursuit of the defendant's cooperation lacks merit.

The plaintiffs filed and successfully litigated a motion to

compel the defendant to conduct reasonable searches for

documents, and yet, as is discussed above, the plaintiffs still

have not received the defendant's full cooperation.  The

plaintiffs engaged in months of inevitably costly discovery

efforts lacking the documents that could have sharpened or sped

their inquiries.  The magistrate judge's finding that the

---

[4]Further, an ability to assess the volume and value of
documents that the defendant has not yet adequately searched for
and produced cannot otherwise stand in the way of assessing the
degree of prejudice to the plaintiffs.  It would not be
inappropriate to resolve against the defendant any uncertainty
regarding the volume and value of these documents since it was
the defendant's failure to adequately search for and produce all
responsive documents that impeded full evaluation of them.

defendant's conduct has caused prejudice to the plaintiffs is not faulty.

B.    Deterrence and impact on court

The magistrate judge concluded that the defendant "has made a mockery of Rule 34, the case management orders of the court, the order granting Plaintiffs' motion to compel, and the evidentiary hearing." Moore, 255 F.R.D. at 35.  The magistrate judge found that the defendant's conduct at the evidentiary hearing constituted "substantial and prejudicial obduracy[,]" amounting to a willful, bad faith attempt to "justify [the defendant's] production of only those documents [she] was inclined to produce." Id.  Specifically, the magistrate judge found that Hunnicutt's testimony lacked credibility and candor. The magistrate judge also found that "the court's ability to conduct an orderly and efficient evidentiary hearing was further compromised by Defendant's inability to call all of the witnesses" who were expected because at least one witness decided to circulate an e-mail with a press account about Hunnicutt's testimony "to other witnesses whose names were included on Defendant's witness list."[5]  Id. at 29-30, 35.

---

[5]When discussing imposing a sanction to avoid "prejudice to the court," the D.C. Circuit has focused on potential prejudice to the court's calendar -- that is, where, absent an appropriate sanction, a party's misconduct would "put an intolerable burden on a district court by requiring the court to modify its own docket and operations" and require the court to "expend considerable judicial resources in the future in addition to

The defendant disputes the finding of an injury to the court because the defendant was not required to document her searches and because the witnesses who were not called were not identified by the magistrate judge or the plaintiffs as necessary to the evidentiary hearing. (Def.'s Obj'ns at 37-38.) While the defendant was not obligated to document her searches in any particular manner, a party vowing to demonstrate her absolute compliance with a court order should carry some responsibility to refrain from presenting testimony lacking candor. As is noted above, the defendant has shown no fault with the finding that Hunnicutt lacked candor and credibility. Regarding the defendant's objection to the magistrate judge's finding that the court was harmed by the defendant's disregard of the rule on witnesses, defense counsel conceded that she did exclude witnesses who had been inappropriately exposed to press coverage of the evidentiary hearing. Moore, 255 F.R.D. at 29 (quoting Feb. 25 Evid'y Hrg. Tr. at 266-68). Contrary to the defendant's unsupported objection, the magistrate judge had a reasonable

---

those it has already wasted[.]" Shea v. Donohoe Constr. Co., Inc., 795 F.2d 1071, 1075-76 (D.C. Cir. 1986). While the magistrate judge characterized as evidence of "prejudice to the judicial system" her findings that the defendant willfully made a mockery of the federal rules and the court's orders and interfered with the court's ability to conduct an efficient evidentiary hearing, these findings are as appropriately considered as reasons for sanctioning the defendant under a "deterrence and punishment" rationale -- that is, where there is a "need to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future." Id. at 1077.

basis to infer that the defendant's management of potential
witnesses compromised the court's ability to conduct an efficient
hearing because the defendant admitted that her presentation of
evidence was affected by her agents' inappropriate exposure to
press reports.[6]  Accordingly, it was not error for the magistrate
judge, having found that the defendant presented a witness who
lacked credibility and failed to prevent contamination of
potential witnesses, to conclude that the defendant's conduct was
disrespectful to the court.

In finding a need to deter similar misconduct in the future,
the magistrate judge found a severe such sanction was necessary
because a "'lesser sanction may also yield similar misconduct by
other litigants by indicating that flagrant violations will yield
only minor sanctions.'"  Moore, 255 F.R.D. at 35 (quoting Perez
v. Berhanu, 583 F. Supp. 2d 87, 91 (D.D.C. 2008)).  In assessing

---

[6]In discussing the defendant's alleged violations of the
rule on witnesses, the magistrate judge concluded that the
defendant "failed to instruct the potential witnesses to refrain
from reading press reports of testimony elicited during the
hearing[,]" and that after learning that an agent transmitted a
newspaper article to potential witnesses, "counsel for the
Defendant saw fit to do absolutely nothing[.]"  Moore, 255 F.R.D.
at 30.  It is apparent, though, that the magistrate judge did not
mean that defense counsel's efforts to comply with the rule on
witnesses were non-existent.  The magistrate judge accepted as
credible the testimony of Mays and Gavin who each explained that
he did not read the e-mailed article regarding Hunnicutt's
testimony because defense counsel had instructed him not to read
public accounts of the hearing.  Id. at 28-29.  In addition, the
magistrate judge found that defense counsel made efforts to
investigate the scope of Mays' and Gavin's exposure to the e-
mailed article.  Id. at 29.

what sanction would be just and proportional to remedy the harms caused by the defendant's violation and to deter future discovery misconduct, the magistrate judge observed that the court's previous attempts to remedy defendant's conduct through lesser corrective actions, including prior orders compelling discovery, monetary sanctions, and a sanction precluding the defendant from using certain evidence not timely disclosed to the plaintiffs, proved insufficient to deter the defendant from "disregard[ing] [her] discovery obligations." Id. at 36.

The defendant objects to the magistrate judge's reliance on the multiple lesser sanctions previously imposed by the court as justification for the need for the preclusion sanction at issue. The defendant contends that because her objections to two of the three previous sanction orders were pending at the time the magistrate judge issued the sanction at issue, it was "manifestly unfair and premature for the Magistrate Judge to sanction [the] defendant based on rulings" still subject to review by the district court. (Def.'s Obj'ns at 39.) A pending review of prior lesser sanctions does not obligate a magistrate judge to be blind to prior findings of misconduct and whether her imposition of previous, lesser sanctions was insufficient to deter the defendant's subsequent discovery misconduct. The defendant's argument is of particularly little weight here since the magistrate judge's two previous sanctions orders, although

slightly modified, have been largely upheld in substance.  See
Moore v. Napolitano, Civil Action No 00-953 (RWR/DAR), 2009 WL
2450280 (D.D.C. Aug. 7, 2009).

    C.  Proportionality/no lesser alternative

    In concluding that the instant preclusion sanction is
"'just,' and is 'guided by the concept of proportionality between
offense and sanction[,]'" the magistrate judge "considered the
extent to which 'less dire alternatives have been explored
without success' or would obviously prove futile[.]"  Moore, 255
F.R.D. at 36 (quoting Bonds, 93 F.3d at 808) (internal quotation
marks omitted).  The magistrate judge determined that the instant
preclusion sanction was "not 'litigation-ending[,]'" but
nonetheless significant enough to remedy the defendant's
violation.  Id. (quoting Bonds, 93 F.3d at 808).  The defendant
alleges that the magistrate judge erred in imposing a severe
sanction akin to a litigation-ending default judgment, and
alleges that an appropriate sanction, if any, would be a "re-
opening of discovery, allowing plaintiffs to supplement their
motion for class certification, and a division of costs for
adjudicating plaintiffs' motion to compel."  (Def.'s Obj'ns at
44-45.)

    For all of the reasons discussed above, including the
defendant's history of protracted recalcitrance during discovery,
the failure of previous, lesser sanctions to deter subsequent

violations, the resulting prejudice to the plaintiffs, and the
need to deter the defendant's willful conduct, the magistrate
judge had an adequate basis for rejecting the defendant's
suggestion that the appropriate sanction would be to give the
defendant yet a third opportunity to comply with her latest
discovery obligations, and had an adequate basis for imposing a
significant sanction in response to the defendant's violation of
the order compelling a reasonable search for responsive
documents.  Her conclusion was, in essence, that enough is
enough.  That conclusion was fair at this stage in the
litigation.  Since the magistrate judge's intent was that the
preclusion sanction imposed not be litigation-ending, the
sanction will be construed not to prevent the defendant from
offering <u>any</u> defense to any prima facie case of discriminatory
non-promotion.  Rather, the defendant will be precluded from
offering any legitimate, nondiscriminatory reason to rebut any
prima facie case of disparate treatment discriminatory
nonpromotion of the individual named plaintiffs.

Construing the sanction in this manner tailors a
proportional remedy to the alleged harm, and does not produce an
unsupported litigation-ending sanction.  It is the individual
named plaintiffs whose time, energy and resources have been most
frustrated by the defendant's discovery misconduct and most
compromised in the effort to gather anecdotal evidence in support

of their discriminatory nonpromotion allegations.  And as <u>Bonds</u>
recognized, defendants would have multiple methods available for
mounting a defense against the individual named plaintiffs'
promotion discrimination claims: denying the factual accuracy of
plaintiffs' evidence, attacking the credibility of plaintiffs'
witnesses under Federal Rules of Evidence 602, 607, 608, 609, 613
and others; attacking the sufficiency of plaintiffs' prima facie
evidence in opening statements and closing arguments and under
Federal Rule of Civil Procedure 50, and others.  Unlike the <u>Bonds</u>
plaintiffs, however, plaintiffs here present a protracted history
of repeated discovery misconduct by a defendant warranting a
severe preclusion sanction.

Moreover, in a pattern and practice case, a plaintiff class
seeking to carry its prima facie burden of offering evidence
adequate to create an inference of discrimination will usually
provide statistical evidence showing a disparity between the
position of the class members and other similarly-situated
individuals, and may also present anecdotal evidence to show that
the statistical disparity is the result of unlawful
discrimination.  <u>Segar</u>, 738 F.2d at 1267; Arnold, 863 F.2d at
999-1000.  Once plaintiffs have established their prima facie
case of discrimination, there are two ways an employer-defendant
can seek to rebut the plaintiffs' case.  First, "[t]he employer
can endeavor to refute the plaintiffs' claim that a disparity

exists" by "[c]hallenging the accuracy or significance" of the
plaintiffs' statistical showing.  <u>Segar</u>, 738 F.2d at 1267-68.
Alternatively, a defendant can present an "explanatory defense"
"to show that any observed disparities between plaintiffs and
[another] group did not result from discrimination violative of
Title VII."  <u>Id.</u> at 1267-68.  Under a disparate treatment theory,
the defendant will offer "a legitimate, nondiscriminatory
explanation for the disparity" such as "some additional job
qualification . . . that the plaintiff class lacks."  <u>Id.</u> at
1268.  Under a disparate impact theory where the plaintiffs have
linked the alleged disparity to a particular business practice,
the defendant will seek to prove "the business necessity of the
practices causing the disparity."  <u>Id.</u> at 1270.  Although the
defendant will be precluded from offering a legitimate,
nondiscriminatory reason for any discriminatory nonpromotion that
the individual named plaintiffs establish that they suffered, she
may defend against the plaintiffs' statistical showing by either
attacking the accuracy of the plaintiffs' statistical showing or
presenting competing statistical evidence to refute the
significance of the plaintiffs' showing.

<u>CONCLUSION AND ORDER</u>

Based on all of the evidence presented, it was not clearly
erroneous for the magistrate judge to find that the defendant
violated the discovery order compelling the defendant to conduct

a reasonable search for and produce responsive documents.
Furthermore, the defendant has shown neither that the magistrate
judge erred in imposing sanctions under Rule 37 for the
defendant's failure to reasonably search for and produce
responsive documents nor that the magistrate judge's imposition
of costs was unjust.  The preclusion sanction will be construed
to preclude the defendant from offering any legitimate, non-
discriminatory reason to rebut any prima facie case of disparate
treatment discriminatory nonpromotion of the individual named
plaintiffs.  Accordingly, it is hereby

ORDERED that the defendant's objections [605] to the
magistrate judge's imposition of sanctions be, and hereby are,
OVERRULED.  The defendant is precluded from offering any
legitimate, non-discriminatory reason to rebut any prima facie
case of disparate treatment discriminatory nonpromotion of the
individual named plaintiffs.

SIGNED this 15th day of July, 2010.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge