**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**


**REGINALD G. MOORE, et al.,**          )
                  **Plaintiffs,**          )
                                        )
              **v.**          )          **Civil Action No. 00-953 (PLF/DAR)**
                                        )
**JEH C. JOHNSON, Secretary,**          )
**U.S. Department of Homeland Security,**          )
               **Defendant.**          )
                                        )


**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ...................................................................................................2

        A.      Nature of the Lawsuit.................................................................................2

        B.      Procedural History ....................................................................................2

                1.      Litigation.........................................................................................2

                2.      Settlement Efforts ...........................................................................4

III.    THE PROPOSED SETTLEMENT ......................................................................4

        A.      Monetary Relief .......................................................................................4

        B.      Modifications to and Testing of Special Agents GS-14 and
                GS-15 Selection Practices..........................................................................5

                1.      The MPP Scoring Phase...................................................................5

                2.      The MPP Recommendation and Selection Phase ............................6

                3.      Statistical Testing............................................................................7

        C.       Additional Injunctive Relief ....................................................................8

                1.      Training ...........................................................................................8

                2.      Equal Employment Opportunity and Diversity ..............................8

                3.      "Second Look" at Promotions Status................................................9

        D.      Administration of the Settlement ..............................................................10

IV.     ARGUMENT.........................................................................................................10

        A.      The Proposed Settlement Should Be Preliminarily Approved Under
                Federal Rule of Civil Procedure 23 ..........................................................10

                1.      Legal Standard for Preliminary Approval ......................................10

2.      The Settlement Is the Product of Arm's Length Negotiations Between Experienced, Capable Counsel After Meaningful Discovery ...................................................................12

3.      The Terms of the Settlement and Their Relationship to Plaintiffs' Claims....................................................13

        a.      *The Proposed Settlement Achieves the Stated Goal the Class Sought to Obtain through this Litigation* .......................................................13

        b.      *The Proposed Settlement Affords Relief that Might Otherwise Not Be Attained through Litigation*...................16

4.      The Status of the Litigation Favors Approval of the Settlement ...........................................................................16

5.      The Record Already Contains Significant Evidence That Class Members Support the Settlement.................................17

B.      The Proposed Process for and Content of the Class Notice Is Reasonable and the Proposed Notice Should Be Disseminated to the Class .........................................................................18

C.      Proposed Schedule Related to Final Approval .........................................20

V.      CONCLUSION.............................................................................................21

## I.    INTRODUCTION

After vigorous advocacy and negotiation, Reginald G. Moore, John E. Turner, C. Yvette Summerour, Leroy Hendrix, Cheryl L. Tyler, Luther K. Ivery, Andrew E. Harris, Jr., and Kenneth Rooks (hereinafter, "Class Representatives"), on behalf of themselves and a class of individuals they represent, and Camilla Simms and Lisa Robertson (hereinafter, "Individual Plaintiffs") (together with Class Representatives, collectively "Named Plaintiffs"), and Defendant Jeh Johnson, Secretary, U.S. Department of Homeland Security (hereinafter "Defendant") (together with Named Plaintiffs and Class Members, collectively "Parties"), have agreed to a settlement of the claims in this 16-year old employment discrimination lawsuit.  The Parties respectfully request, pursuant to Federal Rule of Civil Procedure 23, that the Court issue an order (1) preliminarily approving the proposed Settlement Agreement (Dkt. No. 828) ("proposed settlement" or "settlement"), a copy of which is attached hereto as Exhibit 1, and (2) approving the manner of giving notice of the settlement to Class Members.

The proposed settlement provides for both significant monetary and injunctive relief. The Parties negotiated the proposed settlement at arm's length, believe it achieves a fair, reasonable, and adequate resolution of Plaintiffs' claims, and that it merits preliminary approval by this Court.

This motion focuses on seeking preliminary approval of the injunctive relief agreed to by the Parties.  Because the Defendant is not currently taking a position on the allocation of settlement proceeds to the Named Plaintiffs and Class Members, a separate motion is being filed by the Named Plaintiffs seeking preliminary approval of the distribution of those funds.

1

## II.    BACKGROUND

### A.    Nature of the Lawsuit

This is a Title VII class action brought by African-American Special Agents of the U.S. Secret Service ("Secret Service"), a component of the U.S. Department of Homeland Security, which is headed by Defendant, the Secretary of Homeland Security.  Eight Class Representatives bring a pattern-or-practice disparate treatment race discrimination claim and a disparate impact race discrimination claim on behalf of approximately 121 African-American Special Agents.  At issue in the class complaint portion of this case are promotions of African-American Special Agents who bid for promotion during the time period of 1995-2005 to positions at the GS-14 and GS-15 levels.

Plaintiffs filed this case on behalf of African-American Special Agents to obtain monetary relief and changes to the Secret Service's promotion system at the GS-14 and GS-15 levels.  The proposed settlement meets both of these objectives.

### B.    Procedural History

#### 1.    Litigation

This lawsuit was filed on May 3, 2000.  It was assigned to Judge Roberts until his retirement in March 2016, and then reassigned to Judge Friedman.  The operative complaint is the Second Amended Complaint (Dkt. No. 362) (Aug. 8, 2006).

The litigation has been long, complex, and hard fought, with over 800 docket entries.  We do not attempt a complete chronology here, but we provide a high-level overview of the proceedings to date.

Extensive discovery by both Plaintiffs and Defendant was completed between 2005 and 2008.  Numerous depositions were taken, to include both fact and Federal Rule of Civil

Procedure 30(b)(6) depositions.  Twelve expert reports were exchanged and seven days of expert testimony were taken.  Hundreds of thousands pages of documents were produced.  The Parties also responded to interrogatories and requests for admission.

The Court granted Plaintiffs' motion for class certification on February 25, 2013, certifying a class of "all current and former African-American Special Agents who bid for promotion to a GS-14 position from 1995 to 2004 and were not promoted to GS-14 on the first bid list on which they bid; and all current and former African-American Special Agents who bid for promotion to a GS-15 position from 1995 to 2005 and were not promoted to GS-15 on the first bid list on which they bid; but excluding Special Agents who served as an Assistant Director, a Deputy Director, or the Director of the Secret Service during the class period." *Moore v. Napolitano*, 926 F. Supp.2d 8, 35 (D.D.C. 2013).  Eight Named Plaintiffs were designated Class Representatives, and undersigned counsel for Plaintiffs were appointed as class counsel.  *Id*.  After full briefing and oral argument, in 2014 the U.S. Court of Appeals for the D.C. Circuit denied Defendant's request for interlocutory review and allowed the class certification decision to stand.  *In re Johnson*, 760 F.3d 66, 69 (D.C. Cir. 2014).  Notice was mailed to the 121-member potential class in accordance with Federal Rule of Civil Procedure 23(c)(2)(B).  *See* Dkt. No. 742 (May 13, 2013).  Seven potential class members opted out, and 114 current and former African-American Special Agents remain in the class.

Defendant moved for summary judgment on Plaintiffs' class action claims on March 25, 2015.  Dkt. No. 811.  Defendant had also moved for summary judgment on those portions of the Second Amended Complaint (Dkt. No. 362), that were not included in the certified class, as well as on the claims of the two plaintiffs named in that complaint who were not class members.  Dkt. No. 768.  These motions are fully briefed and oral argument was held on May 5, 2016.  The

Court informally stayed ruling in July 2016 so the Parties could attempt to negotiate a settlement, which they successfully have done.

### 2.    Settlement Efforts

The Parties' efforts to settle this litigation have been extensive.  One such attempt was from November 2010 to September 2011 under the auspices of a private mediator.  The Parties' original agreement was to attempt mediation for up to four months, but the process continued much longer.  The mediation entailed many face-to-face meetings, phone calls, and exchanges of proposals.  Despite a very substantial allocation of resources to the process by all involved, and much progress, ultimately mediation was not successful.  *See* Ex. 2 (J. Klar Decl.) at ¶¶ 3-4.

The Parties made another effort to negotiate a settlement in July 2016, this time without the assistance of a neutral.  Again, hundreds of hours were devoted to face-to-face meetings, phone calls, and the development of and negotiation over proposals.  Efforts to craft mutually agreeable injunctive relief regarding the Secret Service's promotions process were especially time consuming.  After nearly six months, the Parties reached the settlement presented to the Court herein.  *Id.* ¶¶ 6-8.

## III.    THE PROPOSED SETTLEMENT

### A.    Monetary Relief

The settlement provides for the payment of $24 million by Defendant subject to certain opt-out thresholds.  Settlement Agreement at 7 and 32.  This includes funds for payments to all Named Plaintiffs and class members in full and complete satisfaction of all claims made in this litigation, including without limitation, claims for economic and non-economic damages of any kind, back pay, front pay, interest (including both pre-judgment and post-judgment interest),

4

compensatory damages, attorney's fees, and litigation expenses and costs, as well as administration of the settlement.  Settlement Agreement at 8.

The proposed division of the funds is not set forth in the proposed Settlement Agreement or described in this joint motion.  Instead, the proposed division will be described in a second motion for preliminary approval that will be submitted by Plaintiffs alone (styled "Plaintiffs' Motion for Preliminary Approval of Distribution of Settlement Proceeds").  Although not anticipating the need to object to Plaintiffs' proposed distribution, Defendant has retained a right to do so in the proposed Settlement Agreement.

B.      **Modifications to and Testing of Special Agent GS-14 and GS-15 Selection Practices**

The settlement the Parties propose includes provisions affecting two of the phases of the Merit Promotion Plan for GS/GM-1811 Promotions ("MPP"): the scoring phase and the recommendation and selection phase.

1.      **The MPP Scoring Phase**

After the class period ended in 2005, the Secret Service independently implemented substantial modifications to its scoring process for promotions to the GS-14 and GS-15 levels under the MPP.  The Secret Service used an outside expert and subject matter experts to construct a competency-based model and conduct validation studies.  Plaintiffs have reviewed these improvements and agree that they are satisfactory with respect to construction of the scoring system.  *See* Settlement at 9 and 10.  The Secret Service is currently working with an outside expert to update those competencies and make additional improvements to the MPP scoring process (the "2017 MPP scoring process").  *Id.*

In this proposed settlement, the Secret Service has agreed to continue to maintain a competency-based scoring system that is validated by an outside expert, and to continue to

5

publish the competencies used in the scoring process, as it has since at least 2009. *Id.* at 10. Further, if statistical testing reveals that the 2017 MPP scoring process' reliability falls below the range generally accepted in the field based on the assessment of an outside expert, the Secret Service will work with its outside expert to assess possible changes to improve reliability. *Id.* The Secret Service further agrees to provide Plaintiffs the opportunity to review the final 2017 report reflecting the validity and reliability testing, and efforts to improve reliability, if any. *Id.*

### 2.    The MPP Recommendation and Selection Phase

With respect to the recommendation and selection phase of the MPP, the Secret Service commits through this proposed settlement to completing the further development and implementation of a competitive selection process that is based upon standardized evaluative factors that are job-related, and that provides for accountability and flexibility in decision-making. *Id.* at 11.  More specifically, the proposed settlement requires the Secret Service to engage an outside expert to assist in analyzing the existing MPP selection procedures and to develop a list of job-related standardized evaluative factors to be used in making recommendation and selection decisions for vacancies at the GS-14 and GS-15 levels. *Id.* at 11-12.  The outside expert's analysis is not intended to replicate the competencies identified and assessed during the scoring phase of the MPP.  It is intended that the standardized evaluative factors developed will involve objective elements, rather than subjective elements. *Id.* at 13. The Secret Service shall provide employees with notice of the new MPP selection procedures by publishing them as part of the MPP. *Id.* at 17-18.

Under the terms of the proposed agreement, the Secret Service's Advisory Board will use the identified standardized evaluative factors to consider and evaluate candidates for competitive promotion to GS-14 and GS-15 vacancies.  Certain neutrally applied "organizational" factors

may also be considered.  *Id.* at 15.  While the Secret Service retains discretion to consider MPP scores in evaluating promotion candidates, under the proposed agreement the Advisory Board will not consider MPP scores that are not different from each other in a statically significant manner as a basis for differentiating between candidates with such scores.  *Id.* at 21.  Within the framework set out in the proposed settlement, the Advisory Board retains discretion to determine whom to recommend and select for promotion.  *Id.* at 13-17.

Further, the Secret Service's Executive Chief of the Office of Human Resources ("EC HUM"), or designee, will attend all meetings of the Advisory Board where selection decisions are discussed and will ensure that multiple candidates are considered by the Board for each vacancy (unless multiple candidates did not bid on the vacancy).  *Id.* at 19-20.  When a candidate is ultimately selected for promotion, the Secret Service will create and maintain contemporaneous written records of decisions regarding MPP selections.  *Id.* at 17.  The Secret Service will conduct annual audits of the required MPP selection documentation. *Id.* at 20.  The purpose of these audits is to ensure that the standardized evaluative factors are being used, that multiple candidates are being discussed and considered for each vacancy where multiple candidates exist, that organizational factors are applied in the manner prescribed by the proposed Settlement Agreement, that recommendation/selection decisions are being properly documented and that the documentation is being maintained in accordance with policy and the provisions of the settlement .  *Id.* at 20.

### 3.    Statistical Testing

Through this proposed settlement, the Secret Service has agreed to retain an outside expert to analyze data from specified stages of the MPP to determine whether that stage has an adverse impact on African-American Special Agent candidates.  *Id.* at 22-21.  Should the results

of the statistical testing indicate adverse impact for African-American Special Agents, an outside expert will assist the Secret Service in trying to ascertain the cause of the impact and will also assist the Secret Service in considering and testing alternatives to address the adverse impact.  *Id.* at 23.  For a term of years specified in the proposed settlement, the Secret Service will provide Plaintiffs with the expert's final report regarding the testing and analysis of alternatives, if such analysis is needed.  *Id.* at 24.

### C.    Additional Injunctive Relief

#### 1.    Training

The proposed settlement also requires certain forms of training. Those sitting on the Advisory Board or those Special Agents in Charge and Division Chiefs involved in the GS-14 and GS-15 promotion process will be trained on the application of the standardized evaluative factors.  Advisory Board members will also receive a briefing on equal employment opportunity and diversity issues, including unconscious bias and stereotyping.  *Id.* at 18 and 25.

#### 2.    Equal Employment Opportunity and Diversity

The proposed settlement contains several provisions designed to highlight the Agency's continuing commitment to equal employment opportunity concerns and diversity going forward. The Secret Service has agreed that when the Equal Employment Opportunity ("EEO") Director is aware of information, beyond an official finding of discrimination or retaliation, about a promotion/reassignment candidate that may raise a concern, that information may be shared with the Advisory Board.  *Id.* at 24-26.  The Secret Service has in place a specific disciplinary offense for those engaging in biased conduct or the failure to report such conduct, and the Secret Service has agreed to maintain a specific disciplinary offense for such conduct. *Id.* at 26.  In addition, the Agency has agreed to expand its existing Prevention of Harassment Hotline so that it can be used

for reporting incidents of race discrimination. *Id.* at 26. The Agency has further agreed to track certain complaints of race discrimination—whether they are raised through the hotline or formal written complaints—by Responsible Management Official ("RMO") in an effort to identify any patterns. *Id*. at 25-26.

### 3. "Second Look" at Promotions Status

Through this proposed agreement, the Secret Service has agreed, once the selection process standardized evaluative factors have been created and adopted, that it will give the following Class Representatives and Class Members a Second Look for consideration for possible promotion to the GS-14 or GS-15 level: (a) those four individuals who have not been promoted to the GS level to which they were seeking promotion during the Class Period, who are participating in the MPP scoring process for the 2016/2017 promotion cycle, and who receive a final score; and (b) and those three individuals promoted to the GS-14 level after a longer period than the average non-African American Special Agent as determined by the Secret Service for the Class Periods, who are participating in the MPP scoring process of 2016/2017, and who receive a final score. *Id.* at 28. A group comprised of a representative from the Secret Service's EEO Office, the Assistant Director of the Office of Investigations, and an Assistant Director (or other positioned individual) who is a Class Member will review relevant information regarding these seven "second look" Special Agents and consider the standardized evaluative factors to determine whether any such Agent was previously overlooked in promotions. *Id.* For any Agent identified as being overlooked, the Secret Service will refer that Agent to the Advisory Board for further consideration for promotion; the Advisory Board will give additional consideration to any such referred Special Agents for a period of one year with regard to any position for which that Agent bids and makes the Best Qualified List. *Id.* at 29

9

### D.    Administration of the Settlement

The Plaintiffs have selected Settlement Services, Inc., an experienced class action

administration firm, to serve as Class Administrator.  *See* Ex. 3 (Class Administrator

Brochure).The Class Administrator will be responsible for various tasks including mailing notice

of the proposed settlement and claim forms to Class Members, receiving requests to opt-out of

the Settlement, processing checks, maintaining a website containing pertinent documents, and

responding to inquiries from Class Members.

## IV.    ARGUMENT

We explain below why the non-financial components of the proposed settlement warrant

preliminary approval under Rule 23.  The separate motion being filed today by Plaintiffs

explains why Plaintiffs believe that the financial components warrant preliminary approval, as

well.  The overarching legal standards applicable to all components of the settlement, set forth in

Section IV.A.1., immediately below, are the same.

### A.    The Proposed Settlement Should Be Preliminarily Approved Under Federal Rule of Civil Procedure 23

#### 1.    Legal Standard for Preliminary Approval

Judicial approval of a class settlement under Federal Rule of Civil Procedure 23(e)

involves a two-step process.  Manual for Complex Litigation (Fourth), §§ 13.14, 21.6632 (2004).

First, "the proposal [is reviewed] preliminarily to determine whether it is sufficient to warrant

public notice and a hearing."  *Id.*  If the court finds that a proposed class settlement is "the

product of serious, informed, non-collusive negotiations, has no obvious deficiencies, . . . and

falls within the range of possible [judicial] approval," the court should grant preliminary

approval and schedule a formal fairness hearing and direct notice to the class.  *In re Vitamins*

*Antitrust Litig.*, No. 99-197, 1999 WL 1335318, at \*5 (D.D.C. Nov. 23, 1999) (citing *In re Shell*

*Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993)); *Blackman v. Dist. of Columbia*, 454 F. Supp. 2d 1, 8 (D.D.C. 2006) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.") (internal citations omitted); Manual for Complex Litigation (Fourth), at § 21.633.

The second step of the approval process follows preliminary approval and the provision of notice to the class with an opportunity for comment and objection.  At this step, the Court must hold a hearing and determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  This inquiry is central to the first step, too, because the first step considers whether the settlement is "within the range of possible approval."

To determine whether a settlement is "fair, reasonable, and adequate," there is "'no obligatory test'" in the D.C. Circuit.  *Blackman*, 454 F. Supp. 2d at 8 (quoting *Pigford v. Glickman*, 185 F.R.D. 82, 98 (D.D.C. 1999)); *Equal Rights Center v. Wash. Metro. Area Transit Auth.*, 573 F. Supp. 2d 205, 211 (D.D.C. 2008).  Factors typically considered by courts in this Circuit are:

> (1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strengths of plaintiffs' case; (3) the status of the litigation proceedings at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel.

*Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 163 (D.D.C. 2014); *see also, e.g.*, *Ceccone v. Equifax Information Servs. LLC*, No. 13-CV-1314, 2016 WL 5107202, at *4 (D.D.C. Aug. 29, 2016).  Among these considerations, the primary task is to "evaluat[e] the terms of the settlement in relation to the strength of the[] case." *Pigford*, 206 F.3d at 1217; *see Thomas v. Albright*, 139 F.3d 228, 231 (D.C. Cir. 1998) ("The Court's primary task is to evaluate the terms of the settlement in relation to the strength of the plaintiffs' case.").  A court's discretion "to

11

reject a settlement is restrained by the 'principle of preference' that encourages settlements."
*Pigford*, 185 F.R.D. at 103 (citation omitted).

Application of the factors set forth above for both steps of the approval process confirms that the proposed settlement should receive preliminary approval.

### 2. The Settlement Is the Product of Arm's Length Negotiations Between Experienced, Capable Counsel After Meaningful Discovery

As described above, the settlement is the product of extensive arm's length negotiations by experienced counsel. Both sides were represented in those negotiations by accomplished and highly experienced counsel: the government by lawyers from the U.S. Department of Justice, the U.S. Department of Homeland Security, and the Secret Service, Plaintiffs by lawyers from Hogan Lovells and the civil rights firm of Relman, Dane & Colfax. Plaintiffs' counsel have been appointed class counsel in numerous other cases, and the Court observed in appointing them class counsel in this case that "[t]here is no dispute as to whether the plaintiffs' class counsel are appropriate, and there is no indication that class counsel lack the experience and knowledge required to represent the class." *Moore*, 926 F. Supp. 2d at 35.

Counsel are well-informed of the strengths and weaknesses of the case. Both rounds of in-depth negotiations – in 2010/2011 and 2016 – came after the completion of discovery, and the second round came after summary judgment briefing and argument and after an appeal to the D.C. Circuit on class certification.

That the Parties were unable to reach an agreement during the first round, despite trying for ten months with the assistance of a highly-regarded mediator, is testament to how hard-fought the negotiations were. It took nearly six more months in the second round to reach a resolution.

It is clear, in sum, that the settlement presented to the Court is "the product of serious, informed, non-collusive negotiations" "between experienced, capable counsel," such that a "presumption of fairness, adequacy, and reasonableness" should attach.  *In re Vitiamins Antitrust Litig.*, 1999 WL 1335318, at *5; *Blackman*, 454 F. Supp. 2d at 8; *see also In re Johnson*, 760 F.3d at 72 (describing the government's then-14-year defense of the case as "tenacious[]").

### 3.    The Terms of the Settlement and their Relationship to Plaintiffs' Claims

The proposed settlement provides relief that is related to Plaintiffs' claims, including monetary recoveries and non-monetary agreements.  On the monetary side, the Secret Service has agreed to pay $24 million, subject to opt-out thresholds, to resolve all claims in this case.  *See* Settlement at 7, 32.  While the specific distribution of those funds is set forth in detail in Plaintiffs' forthcoming Motion for Preliminary Approval of the Distribution of the Settlement Proceeds, it is undisputed that the settlement ensures that there are sufficient funds to compensate the class.  In addition, the non-monetary relief afforded by this settlement effectuates the stated goals of the class, and provides certain relief that the class would have no guarantee of obtaining if they proceeded with litigation.  Considered, as it must be, in the context of Plaintiffs' goals and the risks they would face if the case proceeded to summary judgment adjudication and possible trial, the settlement achieves a favorable result for the class.

#### a.    *The Proposed Settlement Achieves the Stated Goal the Class Sought to Obtain through this Litigation*

The injunctive relief achieved through this settlement addresses the specific issues the class asserted in this litigation.

First, the settlement ensures that the promotions system challenged by the class as discriminatory based on race is going-forward based on objective and job-related factors.  During

13

the class period, the Secret Service used a scoring system in which an Agent's MPP score was based on a supervisor's evaluation and peer and/or second level evaluation.  *See* Dkt. No. 677 at 5.  Plaintiffs have alleged that the Secret Service's use of these scores had an adverse impact on African-Americans.  *See, e.g.,* Dkt. No. 711 at 31-32.  Selection recommendations were made by the Advisory Board without any written or published restriction or guidance as to what should be considered in selecting candidates for promotion from the Best Qualified Lists, and without any contemporaneous records of the reason(s) for any selection decision.  *See* Dkt. No. 585 at 20-21. Plaintiffs have maintained that under this framework, at times during the class period fewer African Americans were selected for promotion than would be expected in the absence of discrimination at either the GS-14 or GS-15 levels.  *See, e.g.,* Dkt. No. 677 at 12.  In addition, Class Representatives and Class Members described being turned down for promotion based on Agency considerations, when the same Agency consideration was alleged to have not applied to non-African-American Special Agents.  *See id.* at 55-56.  Plaintiffs' expert opined that the MPP promotions system in place during the class period did not adhere to principles governing how selection policies should be designed in order to be valid, non-discriminatory, and job related (meaning that the selection procedures serve their purpose of identifying the characteristics of the most qualified candidate for the position at issue).  *See id.* at 10-11.

These concerns as asserted by Plaintiffs are specifically addressed in the proposed settlement.  It requires that the Secret Service to continue to maintain a competency-based scoring process validated by an outside expert such as that which was put in place by the Secret Service in 2009.  *See* Settlement at 10.  The settlement further obligates the Secret Service to complete further development and implementation of a set of standardized evaluative factors that are job-related, and that are to provide for accountability and flexibility in the final decision-

making stage of the existing MPP, the recommendation and selection phase; to continue to publish the competencies used in MPP scoring phase; to publish the standardized evaluative factors applied in the recommendation and selection phase; and to contemporaneously document the reasons(s) for each candidate's selection for promotion or reassignment to a competitively bid GS-14 or GS-15 Special Agent vacancy. *See* Settlement at 10, 17-18; *see also* Dkt. No. 677 at 53-56. The settlement also requires statistical testing and reporting to identify possible adverse impact on African-American Special Agent candidates stemming from the MPP GS-14 and GS-15 promotion process. *See* Settlement at 21-25.

Second, the settlement contains several measures to ensure that changes to the MPP as implemented continue to be applied. Advisory Board members, Special Agents in Charge, and Division Chiefs are to be trained on the new standardized evaluative factors and the use of those factors in making recommendations as part of the MPP process. *Id.* at 18-19. In addition, the Secret Service's EC HUM, or designee, must be present for all Advisory Board discussions of candidates and make sure that the standardized evaluative factors and the organizational factors are neutrally applied. *See* Settlement at 19-20. The Secret Service will also perform audits to confirm implementation of the changes to the recommendation and selection phase of the MPP. *See* Settlement at 20.

Third, the proposed settlement responds to the allegations made by class members that racial incidents went unaddressed. *See, e.g.,* Dkt. 677 at 37-43. The Secret Service has agreed to create and publish to Secret Service employees a policy to provide for the use of the existing Prevention of Harassment Hotline to be used as a mechanism for reporting incidents of misconduct and discrimination. *Id.* at 27. Calls to the Hotline reporting incidents of discrimination against African-American Special Agents on the basis of race will be tracked by

15

RMOs to determine if a cognizable pattern exists. *Id*. And, as the Secret Service had already independently implemented a specific discipline offense for those engaged in biased conduct or who fail to report biased conduct, the Secret Service agreed to continue to maintain and publish a specific discipline policy for those who engage in biased conduct or who fail to report biased conduct. *Id.* at 27-28.

> b.      *The Proposed Settlement Affords Relief that Might Otherwise Not Be Attained through Litigation*

The settlement the Parties propose is not only favorable to class members in achieving the class's goals, but it provides certainty of relief that would otherwise not be possible in litigation. If the class proceeded with litigation, there would be no certainty of any recovery, let alone the tailored injunctive relief set forth in this settlement or the monetary relief achieved here. Had this case proceeded to trial, even if Plaintiffs did prevail, any changes to the Secret Service's MPP obtained through court order likely would not be as detailed or meticulously designed as those proposed here.

### 4.      The Status of the Litigation Favors Approval of the Settlement

Just as in *In re Vitamins Antitrust Litigation*, 305 F. Supp. 2d 100 (D.D.C. 2004), the matter has been ongoing for years and summary judgment, the resolution of which would substantially affect the Parties' prospects, is pending. The Court in that case found that:

> [T]hese Settlements do not come too early to be suspicious nor too late to be a waste of resources. It is in fact at a desirable point in the litigation for the parties to reach an agreement and resolve these issues without further delay, expense, and litigation.

*Id.* at 105. Those findings apply here in full.

It is important to note that much more litigation would need to come, at substantial cost, if the case were litigated to conclusion. A trial would likely require the

16

better part of a month.  Even assuming a win for Plaintiffs, each Plaintiff (except for the class representatives) would still need to go through individual "*Teamsters* hearings." Each would need to establish his or her damages in those hearings.  Moreover, Defendant would be free during those hearings to dispute the inference of discrimination with evidence that any particular non-promotion "was not based on its policy of discrimination."  *Teamsters*, 431 U.S. at 362; *see also In re Johnson*, 760 F.3d at 75. Additionally, at the end of this process Defendant would still be able to appeal the class certification decision, as well as other discovery-related decisions that, if set aside on appeal, could mean years more of litigation in this case.

The settlement comes after sufficient litigation to assure that the decisions on both sides are well-informed, and early enough – despite the many years the case has been pending – to save significant time and resources.  It is an ideal time for a settled resolution.

### 5. The Record Already Contains Significant Evidence That Class Members Support the Settlement

In most class action settlements, the positions of class members are not known at the preliminary approval stage.  That is because notice of the settlement providing an opportunity for class members to file objections or (in the case of Federal Rule of Civil Procedure 23(b)(3) classes) to opt out has not yet been distributed.  In this case, support for the settlement is nonetheless already clear.  Attached to this motion are declarations from fifteen class members stating their unequivocal support for the settlement.  *See* Ex. 4 (Class Member Declarations); Ex. 5 (Class Representative Declarations).  This includes all eight Class Representatives and seven additional class members.  With respect to the components of the settlement that modify the Secret Service's promotions policy, these class members all state that "the non-monetary terms

17

of the proposed settlement are good and fair" Ex. 4 ¶ 9; Ex. 5 ¶ 8.  These class members all state that they "strongly support the settlement."  *Id*. ¶ 10

### B.    The Proposed Process for and Content of the Class Notice Is Reasonable and the Proposed Notice Should Be Disseminated to the Class

Prior to finally approving the proposed settlement, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  This is in addition to the notice provided to all class members in 2013 when the class was certified.  *See* Order Approving Form of Class Notice and Notice Plan (Dkt. No. 742) (May 13, 2013).  The notice must be "direct[ed] in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Two other provisions of Federal Rule of Civil Procedure 23(e) affect the content of the notice: "the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so," and "[a]ny class member may object to the proposal . . . ."  *Id.* 23(e)(4), (5).

The Parties propose to give notice of the proposed settlement to all class members using the same method as the Court approved in 2013.  That is, individual notice will be mailed directly to each class member via first-class mail using addresses previously provided by Defendant.[1]  Class counsel has repeatedly sent letters to all class members since 2013, and maintains a database of updated addresses; moreover, class counsel is in individual communication with a significant percentage of the class.  In addition, the Secret Service will

---

[1] This means all who meet the class definition, except for the seven who opted out in 2013.  The language regarding exclusion in the 2013 notice included the following:  "If you exclude yourself from the class – which is sometimes called 'opting out' of the class – you will not get any money or benefits from this lawsuit even if the Plaintiffs or class members obtain them after proving discrimination at trial or from any settlement that may be reached between Plaintiffs and the Secret Service."  Dkt. No. 742-1 (May 13, 2013) at § 14.

18

provide updated, current addresses for those approximately forty-two class members who remain employed by the Secret Service.  If a notice is returned as undeliverable, the Class Administrator will make all reasonable efforts to provide updated/corrected contact information, and the notice will be remailed.

Providing mailed notice satisfies Federal Rule of Civil Procedure 23(e)(1)'s "reasonable manner" requirement because mailed notice "ordinarily satisfies" Rule 23(c)(2)(B)'s "best notice that is practicable under the circumstances" requirement, which if anything is more demanding. *Peters v. National R.R. Passenger Corp.*, 966 F. 2d 1483, 1486 (D.C. Cir. 1992); *see also, e.g.*, *Brown v. Wells Fargo Bank N.A.*, 25 F. Supp. 3d 144, 149 (D.D.C. 2014).  There is nothing out of the ordinary here.  Mailed notice also satisfies the due process concerns implicated by (b)(3) class actions, namely "the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Id.*

The parties' proposed notice is attached here is Exhibit 6.  The format and content of the notice will match the 2013 notice to the greatest extent possible.  New language describing the financial and non-financial terms of the settlement and settlement-related procedures, as well as how to object, is set forth in the same style as the 2013 notice, and the notice continues to explain how a Class Member may opt out of the class and the consequences.  New language also informs Class Members that they may obtain copies of the Settlement Agreement and other key documents from a web site that will be maintained by the Class Administrator, and that they may contact Class Counsel or the Class Administrator with any questions they may have regarding the settlements and the procedures that will be used to implement it.  The notice will be provided to Class Members with adequate time for them to decide if they want to object or opt out. *See*

Settlement Agreement at 30-33 (opt-outs and objections due thirty-six days after deadline for mailing of notice); Ex. 6 (Proposed Notice) at 12-13.

### C.    Proposed Schedule Related to Final Approval

If the Court grants preliminary approval of the proposed settlement, the Parties respectfully propose the following schedule for the remaining procedural steps leading to the Court's final review:

| | |
|---|---|
| Deadline for mailing of notice to Class Members | 51 days prior to Final Fairness Hearing |
| Deadline for opting out | 36 days after mailing of notice to Class Members |
| Deadline for Class Administrator to file opt out statements with the Court | 5 days after deadline for opting out |
| Deadline for filing objections | 36 days after mailing of notice to Class Members |
| Deadline for Plaintiffs to file motion for an award of attorneys' fees and costs | 30 days prior to Final Fairness Hearing |
| Deadline for filing motion for final approval of settlement, and to respond to any objections | 5 days prior to Final Fairness Hearing |
| Final Fairness Hearing | 60 days after the Court preliminarily approves the settlement |

If this schedule is not convenient for the Court, Plaintiffs request that the Court use the same or greater intervals between each event listed to provide all Parties sufficient time to

comply and to provide Class Members sufficient time to review the terms of the proposed settlement, consider their options, and act accordingly.

## V.    CONCLUSION

For the reasons set forth above, the Parties respectfully submit that that Court should grant preliminary approval to the Settlement Agreement and enter the proposed preliminary approval order in the form submitted herewith.

Respectfully submitted,


___/s/ E. Desmond Hogan___
E. Desmond Hogan (D.C. Bar # 458044)
Kathryn Marshall Ali (D.C. Bar #994633)
Hogan Lovells USA
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600

Channing D. Phillips (D.C. Bar # 415793)
United States Attorney
  for the District of Columbia

Daniel F. Van Horn (D.C. Bar # 924092)
 Chief, Civil Division


___/s/ Jennifer I. Klar___
John P. Relman (D.C. Bar # 405500)
Jennifer I. Klar (D.C. Bar # 479629)
Megan Cacace (D.C. Bar # 981553)
Relman, Dane & Colfax PLLC
1225 Nineteenth Street, N.W., Ste 600
Washington, D.C. 20036
(202) 728-1888

*Attorneys for Plaintiffs & the Class*

___/s/ Marina Utgoff Braswell___
 Marina Utgoff Braswell (D.C. Bar # 416587)
 Benton G. Peterson (WI Bar # 1029849)
 Peter C. Pfaffenroth (D.C. Bar # 496637)
 Assistant U.S. Attorneys, Civil Division
 555 Fourth Street, N.W.
 Washington, D.C. 20530
 (202) 252-2561

*Attorneys for Defendant*


Dated:  January 27, 2017

21